ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| JULIA MORALES FLORES REINALDO LUIS MORALES<br><br>Parte Recurrida<br><br>v.<br><br>**AVRO CORP. h/n/c AVILÉS AUTO**<br><br>COOPERATIVA DE SEGUROS MÚLTIPLES DE PR; PENFED CREDIT UNION; AUTOGERMANA, INC.; UNIVERSAL INSURANCE COMPANY<br><br>Parte Recurrente | KLRA202400068 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2022-0012805<br><br>Sobre: Compraventa de Vehículo de Motor |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece la parte recurrente, AVRO Corp. h/n/c Avilés Auto (en adelante Avilés Auto o parte recurrente), y solicita que revoquemos la resolución emitida y notificada el 26 de diciembre de 2023, por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, DACo declaró con lugar la querella presentada por la parte recurrida, Julia Morales Flores y su hermano Reinaldo Luis Morales (en adelante, Sra. Morales Flores o parte recurrida). Por tanto, decretó la nulidad del contrato de compraventa del vehículo de motor objeto de la querella y ordenó la devolución de las prestaciones.

Por los fundamentos que expondremos a continuación, modificamos la resolución recurrida.

**I.**

Número Identificador

SEN2024_____

El 8 de septiembre de 2022, la Sra. Morales Flores compró en Avilés Auto un vehículo de motor usado, marca BMW, modelo X5, año 2017, tablilla JOG-479, número de serie 5UXKT0C36H0V95937, con millaje 50,507. El precio de la unidad fue $41,995.00. La Sra. Morales Flores entregó un pronto de $2,000.00 y dejó en intercambio (*trade in*) un vehículo Mercedes Benz, modelo EW350, año 2011, tablilla HPL711, por el cual recibió un crédito de $10,000.00, para un crédito total de $12,000.00. Quedó un balance pendiente de $29,995.00, de los cuales Pentagon Federal Credit Union financió $27,187.00.[1]

El 9 de diciembre de 2022, la Sra. Morales Flores presentó una querella ante DACo en contra de Avilés Auto, Pentagon Federal Credit Union y la Cooperativa de Seguros Múltiples. En esta alegó que encontró en la gaveta del automóvil unos documentos que indicaban que el vehículo había sido impactado por el lado derecho y "que hubo que arreglar [la] cablería debido al impacto que recibió".[2] Afirmó que, al momento de la compraventa del automóvil, Avilés Auto no le informó que la unidad había sido impactada y reparada. Por ello, solicitó la cancelación de contrato por vicios ocultos, la devolución de $2,808.00 que dio como pronto pago y de los $599.00 que pagó por concepto de tablilla – sumas que adujo no se reflejan en la orden de compra – así como la devolución de lo pagado por la prima de seguro de la unidad, más los $150.00 que pagó por el servicio de grúa que transportó la unidad al concesionario para reparación.[3]

Señalada la fecha para la celebración de la vista, el 17 de enero de 2023 la Sra. Morales Flores solicitó su suspensión y requirió la inspección del vehículo por un técnico de DACo.[4]

---

[1] Véase, orden de compra y *Truth in Lending Disclosure*. Apéndice del recurso, pág. 106 y 108.
[2] *Íd.*, pág. 38.
[3] *Íd.,* págs. 37-39.
[4] *Íd.,* págs. 50-51.

También, la Sra. Morales Flores enmendó su querella a los fines de especificar que la primera vez que llevó la unidad a Avilés Auto fue el 21 de octubre de 2022, para un mantenimiento programado y para que verificaran cierto desperfecto encontrado por ella en el asiento de conductor. Añadió que, luego de esa visita, el vehículo presentó desperfectos mecánicos que la obligaron a llevar al vehículo en grúa hasta el concesionario.[5]

El 22 de febrero de 2023, la Sra. Morales Flores enmendó nuevamente la querella para incluir al Taller Autogermana.[6] El 4 de mayo de 2023, la Sra. Morales Flores enmendó la querella una vez más, a los efectos de incluir a la fiadora de Avilés Auto, Universal Insurance Company.[7]

En su contestación a la querella, Avilés Auto negó los desperfectos mecánicos del vehículo vendido a la Sra. Morales Flores y, entre las defensas afirmativas, planteó que, del automóvil presentar algún defecto o vicio de fábrica, desconocía su existencia, por lo que obró de buena fe.[8]

La inspección del vehículo por el técnico del DACo se llevó a cabo el 8 de marzo de 2023, en Autogermana Dealer Centro de Servicio 106 en Guaynabo.[9] El técnico de investigación, Sr. José Torrón Martínez, rindió un informe, el cual fue notificado a las partes el 9 de marzo de 2023. En relación con los resultados de la inspección, el técnico de investigación consignó lo siguiente:

> SAN-2022-0012805-El vehículo estaba en poder de los querellantes con marbete vigente. Solicit[é] elevarlo en un pino hidráulico de taller y por debajo se encontró todo normal. Encontré que el vehículo aparentaba haber sido intervenido de colisión.

---

[5] *Íd.,* págs. 65-67.
[6] *Íd.,* pág. 61.
[7] *Íd.,* págs. 59-60.
[8] Avilés Auto presentó contestación a la querella el 14 de diciembre de 2022. *Íd.,* págs. 43-45. Según la resolución recurrida, la contestación a querella enmendada se presentó el 1 de febrero de 2023. *Íd.,* pág. 1.
[9] En la inspección estuvo presente la Sra. Morales Flores, su hermano el Sr. Reinaldo Luis Morales y el representante legal de Autogermana, Lcdo. Jorge Marquina, y el Supervisor del Taller Autogermana, Sr. Juan Carlos. No surge del informe que algún representante de Avilés Auto estuviera durante la inspección. *Íd.,* págs. 54-56.

El guardalodos pasajero, puerta pasajera y parachoques delantero de goma mostraban "Over Spray" y "Fish Eyes" en la pintura. También mostraba descuadre entre puerta, guardalodos, parachoques y pilar de la capota.

También salimos hacer una prueba de carr[e]tera donde la suspensión no mostr[ó] ruidos y tampoco mal funcionamiento.

En su opinión pericial, el técnico concluyó lo siguiente:

SAN-2022-0012805-Este vehículo fue intervenido en pintura y piezas instaladas mal adheridas, pero no encontré reparación estructural del monocasco.[10]

Por último, el técnico de investigación recomendó el caso para vista administrativa.[11] Conforme surge de la resolución recurrida, el informe de inspección no fue objetado.[12]

La vista administrativa se celebró el 6 de septiembre de 2023. Conforme surge de la *Resolución* recurrida, a la vista compareció la Sra. Morales Flores y su hermano, el Sr. Luis Morales, ambos por derecho propio. En representación de Avilés Auto compareció la Lcda. Brenda Quiñones Bayrón y el Sr. Jan Pérez, Gerente de Servicio de Avilés Auto. La Cooperativa de Seguros Múltiples compareció representada por la Lcda. Mayra Martínez Pérez, y Pentagon Federal Credit Union representada por la Lcda. Victoria Rivera. Por su parte, Autogermana, Inc. estuvo representada por el Lcdo. Jorge L. Marquina, y Universal Insurance Company, por el Lcdo. Miguel J. Carreras Díaz.[13]

Durante la vista, se estipularon los siguientes Exhibits:

Exhibit I: Orden de Compra de Avilés Auto, con fecha del 8 de septiembre de 2022.

Exhibit II: Recibo de Avilés Auto Cayey, con fecha del 9 de septiembre de 2022, por la cantidad de $2,808.00.

Exhibit III: Recibo de Avilés Auto Cayey, con fecha del 8 de septiembre de 2022, por la cantidad de $599.00.

Exhibit IV: Contrato de Financiamiento de Pentagon Federal Credit Union [PENFED].

---

[10] Informe de inspección. *Íd.,* págs. 54-56.
[11] *Íd.*
[12] Véase, *Resolución. Íd.,* pág. 2.
[13] *Íd.,* pág. 3.

Exhibit V: Documento de Póliza de automóvil personal, de Cooperativa de Seguros Múltiples de PR.

Exhibit VI: Invoice 451056 de Autogermana.

Exhibit VII: Recibo de Autogermana, por la cantidad de $671.80.

Exhibit VIII: Informe de CARFAX

Exhibit IX: Evidencia de pagos de la Póliza [póliza núm. PAP-5458070]

Exhibit X: Documento de Fianza núm. 300049884 y endoso, de Universal Insurance Company

Exhibit XI: Recibo de Autogermana por la cantidad de $267.53.

Exhibit XII: Informe del Inspector del Departamento.

Exhibit XIII: Documentos de Avilés Auto [Procedencia del Vehículo, No Aceptamos Devoluciones, Notificación de Acuerdos por Escrito Durante la Venta, un último documento con el encabezado de Avilés Auto/AVRO Corp.].

A su vez, la siguiente prueba, objetada por la parte querellada, se marcó como identificación de la querellante, Sra. Morales Flores:

Identificación I: Documento de Isla Repossessions & Collections, Inc.

Identificación II: *Screenshots* de mensajes de texto.

Identificación III: 2 páginas de fotos en blanco y negro.

Identificación IV: 13 páginas de *screenshots* de mensajes de texto a través de WhatsApp.

Identificación V: páginas con fotos a color del vehículo en controversia.

Desfilada la prueba testifical y documental, DACo emitió la resolución impugnada. En ésta, formuló treinta y cuatro (34) determinaciones de hechos, de las cuales destacamos, por su pertinencia, las siguientes:

1. La parte querellante se identifica como Julia Encarnación Morales Flores y Reinaldo Luis Morales, mayores de edad, hermanos, con dirección postal: Urb. Sabana Gardens, Calle South Main 23-2, Carolina PR 00983, y correo electrónico: aleshkazoely@gmail.com.

   […]

8. El 8 de septiembre de 2022, la querellante, Julia Encarnación Morales Flores, compró en Avilés Auto, localizado en el momento de los hechos en el Mall of San Juan, un vehículo usado [BMW-X5, del año 2017, tablilla JOG-479, con 50,507 millas].

9. Según la Orden de Compra de Avilés Auto, con fecha del 8 de septiembre de 2022, la querellante dio un vehículo en trade-in [Mercedez Benz, del año 2011, tablilla HPL-711, sin deuda pendiente]. Por el vehículo dado en trade-in, el concesionario le dio un crédito a la querellante por la cantidad de $10,000.00.

10. En adición, la querellante pagó la cantidad de $2,808.00 [no la cantidad de $2,000.00, como se desprende de la Orden de Compra], en concepto de pronto-pago, según el recibo de Avilés Auto Cayey, con fecha del 9 de septiembre de 2022, por la cantidad de $2,808.00.

11. A este Departamento le mereció credibilidad el testimonio de la parte querellante en cuanto, a que le cobraron la cantidad de $599.00 en concepto de tablilla, partida que no se desprende de la Orden de Compra, pero le fue cobrada a la querellante el 8 de septiembre de 2022, según el recibo de Avilés Auto Cayey, con fecha del 8 de septiembre de 2022, por la cantidad de $599.00.

12. La compraventa de la unidad fue financiada por Pentagon Federal Credit Union [PENFED], por la cantidad total de $27,187.92 al 7.24% de interés, hasta el 24 de septiembre de 2028. Los pagos del financiamiento están al día.

13. Cooperativa de Seguros Múltiples de PR, fue quien brindó a la querellante la póliza para el automóvil en controversia [póliza núm. PAP-5458070], con vigencia del 10 de septiembre de 2022 al 10 de septiembre de 2023. Por dicha póliza la querellante pagó la cantidad total de $1,087.00, según el documento de Póliza de automóvil personal, de Cooperativa de Seguros Múltiples de PR, estipulado por las partes.

14. En el momento de la compraventa, representantes del concesionario Avilés Auto, le indicaron a la querellante que se le tenía que hacer a la unidad un cambio de pads y discos, por lo cual coordinaron una fecha para dicho servicio.

15. Teniendo el vehículo en su posesión, a los 3 días, la querellante notó que los botones de control del asiento del conductor se desprendían. La querellante lo notificó a un representante del concesionario, Avilés Auto. Estos le indicaron que cuando fuera a su cita de servicio para el cambio de pads y discos, inspeccionaban el asiento.

16. Llegado el día de la cita, no se le brindaron los servicios, no se atendió a la querellante.

17. La querellante continuó utilizando su unidad.

18. El asiento del conductor al ser utilizado se iba para un lado, no se quedaba fijo.

19. La querellante continuó informando la situación a representantes de Avilés Auto.

20. A principios de octubre de 2022, la querellante dejó su unidad en el taller de la parte querellada, concesionario, Avilés Auto. La querellante le indicó al representante del concesionario que se le hiciera el cambio de pads y discos a la unidad, que se le verificara el asiento del conductor, que la unidad tenía un ruido en la parte de atrás y que verificaran el bumper, ya que ella había encontrado unos documentos en la guantera delantera [gaveta frente al asiento del pasajero], los cuales indicaban que la unidad había sido impactada y reparada.

21. El documento que encontró la querellante en la gaveta de la unidad fue el Invoice 451056 de Autogermana, a nombre de la dueña anterior de la unidad, con fecha de febrero de 2021, que indica, en lo aquí pertinente, lo siguiente: "[s]e procedió a remover estribo lado derecho, encontrando cablería de antena lado del pasajero mutilada. Se realizó reparación de cablería de antena lado del pasajero. Se borraron faltas, todo ok al momento".

22. El 4 de octubre de 2022, Avilés Auto entregó el vehículo a la querellante.

23. El 11 de octubre de 2022, mientras la querellante maneja la unidad por la vía de rodaje, comenzó a sentir que el vehículo "brincaba". Al llegar a su residencia, verificó la unidad y notó que estaba "tumbada" de la parte de atrás.

24. Querellante notificó dicha situación a Avilés Auto, y solicitó un cambio de vehículo, ya que, a tan poco tiempo de la compra, había tenido varios problemas,

en adición, no se le informó que la unidad había sido impactada [chocada] y reparada.

25.     La querellante envió a mediados de octubre de 2022, en remolque vehicular, su unidad a Avilés Auto para reparación.

26.     A principios de noviembre de 2022, Avilés Auto se comunicó con la querellante para que pasara a recoger su unidad. La querellante encendió su vehículo y notó que tenía prendida las luces de advertencia en el tablero, indicando advertencia para los pads y discos. La querellante no se llevó el vehículo. Avilés Auto reparó el problema y entregó la unidad al siguiente día.

27.     Avilés Auto no le entregó a la querellante las [ó]rdenes de reparación.

28.     La parte querellante presentó la querella de epígrafe solicitando la resolución del contrato.

29.     Luego de que la parte querellante desfilara su prueba testifical, los representantes legales de Cooperativa de Seguros Múltiples de PR, Pentagon Federal Credit Union, y Autogermana, Inc., solicitaron una NON-SUIT, en sala.

   a. La solicitud del Lcdo. Marquina, en representación de Autogermana, y la solicitud de la Lcda. Mayra Martínez Pérez, en representación de la Cooperativa de Seguros Múltiples de PR, fueron declaradas HA LUGAR.

   b. La solicitud de la Lcda. Rivera, en representación de Pentagon Federal Credit Union, fue declarada NO HA LUGAR.

30.     Los hallazgos en la Inspección, realizada por el Inspector José Torrón Martínez, el pasado 8 de marzo de 2023, fueron los siguiente[s]: "[e]l vehículo estaba en poder de los querellantes con marbete vigente. Solicité elevarlo en un pino hidráulico de taller y por debajo se encontró todo normal. Encontré que el vehículo aparentaba haber sido intervenido de colisión. El guardalodos pasajero, puerta pasajera, y parachoques delantero de goma mostraban "Over Spray" y "Fish Eyes" de pintura. También mostraba descuadre entre puerta, guardalodos, parachoques y pilar de la capota. También salimos [a] hacer una prueba de carretera donde la suspensión no mostr[ó] ruidos y tampoco mal funcionamiento". Como opinión pericial, el

Inspector Torrón indicó: [e]ste vehículo fue intervenido en pintura y piezas instaladas mal adheridas, pero no encontré reparación estructural del monocasco".

31. Avilés Auto reparó el asiento del conductor, pads, discos y parte trasera "tumbada" del vehículo de la querellante.

32. La querellante afirmó para récord, que la firma en los documentos de Avilés Auto es la de ella, sin embargo, no recuerda haber firmado dichos documentos el día de la compraventa. Dichos documentos [Procedencia del Vehículo, No Aceptamos Devoluciones, Notificación de Acuerdos por Escrito Durante la Venta, un último documento con el encabezado de Avilés Auto/AVRO Corp., solamente tienen la firma de la parte querellante. Los documentos tienen los encasillados en blanco, no tienen información del vehículo, no tienen fecha.

   a. El documento-Procedencia del Vehículo, tiene todos los encasillados en blanco, solamente tiene una firma. Dicho documento indica, en lo aquí pertinente, lo siguiente: "cliente fue notificado que el vehículo fue retocado de pintura y/o reparado".

33. La parte querellante no hubiera comprado la unidad si hubiera sabido que dicha unidad fue impactada y reparada, previo a la compraventa.

34. Avilés Auto no le informó a la querellante, en el momento de la compraventa, de manera verbal que la unidad había sido impactada y reparada. Tampoco se lo informó de manera escrita.

En virtud de lo anterior, DACo concluyó que, entre las partes se perfeccionó un contrato de compraventa y que Avilés Auto no cumplió con el requisito de notificar que la unidad había sido impactada y reparada conforme establecido en la Regla 2 del Reglamento Núm. 9158 del 6 de febrero de 2020, conocido como *Reglamento de Prácticas Comerciales* (Reglamento Núm. 9158). Además, coligió que Avilés Auto cobró indebidamente la cantidad de $599.00 en concepto de tablilla por un vehículo usado, lo cual está prohibido por la Regla 20, inciso f, del Reglamento Núm. 9158.

Así también, el foro administrativo añadió que, en virtud de la Regla 30.2 del Reglamento Núm. 7159 del 6 de junio de 2006, conocido como *Reglamento de Garantías de Vehículo de Motor* (Reglamento Núm. 7159), Avilés Auto tenía la obligación de informar por escrito y verbalmente a la Sra. Morales Flores, si el vehículo de motor había sido impactado y reparado. Sobre el particular, DACó concluyó que el lenguaje consignado en el documento titulado *Procedencia del Vehículo* (Exhibit XIII), no cumplía con lo que el Reglamento Núm. 7159 pretende proteger.[14]

Por ello, DACo determinó que al Avilés Auto incumplir con el requisito de notificación verbal y escrita, el consentimiento de Morales estuvo viciado por falta de información, y por consiguiente se configuró dolo grave. En vista de todo lo anterior, la agencia concluyó que procedían los remedios solicitados.

El 26 de diciembre de 2023, DACo emitió y notificó *Resolución* en la que declaró Ha Lugar la querella y decretó la nulidad del contrato de compraventa. En tal virtud, la agencia ordenó a Avilés Auto y a Universal Insurance Company, solidariamente, reembolsar a la Sra. Morales Flores la suma de $10,000.00 por el vehículo dado en *trade-in*, $2,808.00 en concepto de pronto-pago, $599.00 por el cobro indebido de la tablilla en vehículo de motor usado, $1,087.00 en concepto de la póliza de automóvil personal, así como todas las mensualidades pagadas por la Sra. Morales Flores a Pentagon Federa Credit Union, más los intereses correspondientes. De igual forma, DACo requirió que Avilés Auto y Universal Insurance Company pagaran el balance de cancelación del préstamo a favor de Pentagon Federal Credit Union, para relevar a la Sra. Morales Flores

---

[14] *Íd.*, págs. 1-18.

de la deuda. A su vez, la Sra. Morales Flores debía hacer entrega del vehículo a Avilés Auto y Universal Insurance Company.[15]

Inconforme, el 28 de diciembre de 2023, Avilés Auto presentó una solicitud de reconsideración. DACo no se expresó sobre la misma, por lo que el 8 de febrero de 2024, Avilés Auto acudió ante este foro apelativo vía recurso de revisión administrativa. Acompañó con su recurso una solicitud en auxilio de jurisdicción, en la que solicitó la paralización de los efectos de la resolución recurrida. El 9 de febrero de 2024, emitimos una *Resolución* mediante la cual ordenamos la paralización de los efectos de la resolución recurrida.

En su recurso, Avilés Auto le imputa a la agencia la comisión de los siguientes señalamientos de error:

A. Erró el DACO al concluir que hubo dolo grave

B. Erró el DACO al ordenar la devolución de $10,000 por el vehículo que la querellante dio en "trade in".

C. Erró el DACO al ordenar la devolución de lo pagado por la póliza del vehículo de motor.

D. Erró el DACO al no considerar que el contrato de financiamiento con Pentagon no es un contrato de venta condicional a plazos.

En el apéndice del recurso, Avilés Auto incluyó la transcripción de la prueba oral.

La Sra. Flores presentó, por derecho propio, su *Objeción a la transcripción* e informó que se oponía a la transcripción presentada porque "carece de precisión y no constituye una reproducción fiel de la prueba oral".[16] Por ello, aseguró que "la transcripción no es necesaria para la resolución del recurso". Ante nuestra orden para que especificara los fragmentos de la transcripción que objetaba, la Sra. Morales Flores presentó una segunda *Objeción a la transcripción* en la que, de forma general y escueta, indicó que

---

[15] En el dictamen recurrido, DACo desestimó las reclamaciones instadas en contra de las co-querelladas Cooperativa de Seguros Múltiples de Puerto Rico y Autogermana, Inc. *Íd.,* pág. 16.
[16] Véase, *Objeción a la transcripción* presentada el 23 de febrero de 2024.

encontraba discrepancias en algunas expresiones de la transcripción.[17] Siendo así, y conforme advertimos en nuestra *Resolución* del 9 de febrero de 2024, acogemos la transcripción de la prueba oral según presentada.

La Sra. Morales Flores, también presentó por derecho propio su *Objeción al Recurso de Revisión Administrativa* el 11 de marzo de 2024. En ésta, colige que debemos confirmar el dictamen administrativo porque el propósito de la compra del vehículo no se pudo concretar dado el incumplimiento del concesionario con su obligación de notificarle que la unidad que le vendió había sido impactada y reparada. En su escrito de oposición, la Sra. Morales Flores solicitó "que se considere que se añadan los dos mil dólares ($2,000) que no fueron incluidos en la resolución".[18]

De igual forma, el 11 de marzo de 2024, se presentó la *Posición de Pentagon Federal Credit Union en torno a Recurso de Revisión Administrativa,* a los fines de informar que Avilés Auto aún no le ha pagado lo ordenado por DACo en su resolución y de manifestar su punto de vista respecto al cuarto error señalado en el recurso

Con el beneficio de la transcripción de la prueba oral y la comparecencia de las partes, resolvemos.

## II.

## A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las

---

[17] Véase, *Objeción a la transcripción* presentada el 3 de mayo de 2024.

[18] Véase, *Objeción al Recurso de Revisión Administrativa,* a la pág. 4. La Sra. Morales Flores adjuntó a su escrito una *Moción Aclaratoria en Determinaciones de Hechos y Reconsideración* que tiene un ponche de recibido por DACo de 3 de enero de 2024. En dicha moción, ésta explicó que la partida de $2,808.00 - que DACo ordenó que le fuera devuelta - corresponde a la cantidad que pagó a favor de Pentagon Federal Credit Union, de forma adicional y distinta a los $2,000.00 que aportó de contado para la compra del vehículo. Arguyó que si bien la agencia ordenó la devolución de los $2,808.00, desatendió la reclamación de los $2,000.00. Los demás documentos anejados a la *Objeción al Recurso de Revisión Administrativa* no incluyen determinación alguna emitida por la agencia en torno a la moción aclaratoria.

agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[19]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[20] Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.[21] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[22]

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[23] En fin, el tribunal debe limitar su intervención a evaluar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[24]

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos.[25] Ahora bien, lo anterior "no implica que los

---

[19] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).
[20] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[21] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.
[22] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).
[23] *Otero v. Toyota*, supra, pág. 728.
[24] *Íd.*
[25] Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia".[26] Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[27] Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa".[28]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[29]

**B.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341, *et seq.,* delegó en el DACo la responsabilidad de vindicar e implementar los derechos del consumidor. Para ello, "se estableció en la agencia una estructura de adjudicación administrativa 'con plenos poderes para adjudicar

---

[26] *Otero v. Toyota*, supra, pág. 729.
[27] *Íd.*
[28] *Íd.*
[29] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).

las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho'".[30]

A su vez, la Ley Núm. 7 del 24 de septiembre de 1979, según enmendada, *Ley de Garantías de Vehículos de Motor* (Ley de Garantías de Vehículos de Motor), 10 LPRA sec. 2051, *et seq.*, fue promulgada con el fin de "garantizar la seguridad, salud y bienestar de la comunidad evitando que vehículos de motor defectuosos, de gran potencialidad de daño al conductor, ocupantes y otros, transiten por las vías públicas". Exposición de Motivos de la *Ley de Garantías de Vehículos de Motor*. Así también, para proteger a los consumidores de vehículos de motor e imponerles a los fabricantes o manufactureros, y a los distribuidores y vendedores, como eslabones en la cadena de distribución, la responsabilidad y obligación de brindarle a los consumidores el servicio de garantía de fábrica, independientemente del lugar donde el consumidor haya adquirido dicho vehículo. *Íd.*

Mediante el *Reglamento de Prácticas Comerciales*, Reglamento Núm. 9158 del DACo, la agencia agrupó las medidas que regulan determinadas prácticas comerciales. *Íd.*, Regla 2. Esto con el fin de velar por la seguridad y confianza de los consumidores. *Íd.* Dicho Reglamento aplica a toda persona natural o jurídica que se dedique a ofrecer bienes o servicios a consumidores en la jurisdicción del Estado Libre Asociado de Puerto Rico.

Respecto a la venta de vehículos, la Regla 20(f) del Reglamento Núm. 9158 dispone lo siguiente:

> En toda transacción de compraventa o arrendamiento de un vehículo de motor nuevo, los gastos de registro o gestiones relacionadas al mismo, no deberán exceder las cuantías establecidas por el Departamento de Transportación y Obras Públicas para lograr el registro de la unidad. Todo gasto atribuible a dicha transacción deberá ser claramente desglosado por el vendedor en el contrato de compraventa. No se podrá cobrar dos veces

---

[30] *Ortiz Rolón v. Soler Auto Sales, Inc., et al.,* 202 DPR 689, 696 (2019); 3 LPRA sec. 341e(d). (Énfasis nuestro).

por la misma gestión. En el caso de los vehículos de motor usados, el concesionario no podrá cobrar cuantía alguna por concepto de traspaso o gestiones relacionadas al mismo.

El DACo también promulgó el *Reglamento de Garantías de Vehículos de Motor,* Reglamento Núm. 7159 de 6 de julio de 2006 (Reglamento Núm. 7159)[31]. El propósito de este Reglamento es proteger a los consumidores que invierten en la adquisición de vehículos de motor, y procurar que estos sirvan para los propósitos para los cuales fueron adquiridos, y que tengan las condiciones mínimas necesarias para garantizar la protección de la vida y propiedad, así como prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. [32] En específico, la Regla 4 establece que el reglamento deberá interpretarse liberalmente a favor del consumidor.

En lo pertinente, la Regla 30 del Reglamento Núm. 7159, dispone acerca de la información que todo vendedor de vehículo de motor usado deberá ofrecer al consumidor. La referida regla, lee como sigue:

30.1-Todo vendedor estará obligado a notificarle por escrito al consumidor si el vehículo de motor usado que interesa, ha sido usado como taxi, vehículo de transportación pública, vehículo de servicio público, de alquiler, de demostración o cualquier otra finalidad que conlleve uso regular o excesivo.

30.2-Todo vendedor de un vehículo de motor usado, el cual haya sido impactado y reparado posteriormente, deberá indicarlo verbalmente y notificarlo por escrito al consumidor en el contrato de compraventa.

La Regla 31 del precitado Reglamento, además establece lo siguiente:

No se venderá ningún vehículo de motor usado sin que:

a. Haya pasado la inspección que requiere la Ley de Vehículos y Tránsito de Puerto Rico.

---

[31] Cabe señalar que algunas reglas del Reglamento Núm. 7159 fueron enmendadas por el Reglamento Núm. 7920 de 3 de septiembre de 2010, por lo cual de aplicar alguna regla enmendada por dicho reglamento así lo haremos constar.
[32] Regla 2 del Reglamento Núm. 7159.

> b. Su velocímetro y odómetro estén trabajando satisfactoriamente y se verifique que no han sido alterados y que tenga el "vin number" en todas las piezas con respecto a aquellos modelos y marcas de vehículos de motor que designe de tiempo en tiempo el gobierno federal.

Además, la Regla 37 del referido reglamento establece que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil de Puerto Rico para los contratos de compraventa.[33]

### c.

En lo concerniente al contrato de compraventa, el Código Civil de Puerto Rico establece la obligación de saneamiento por evicción o vicios ocultos. Al respecto, el Artículo 1261 establece lo siguiente:

> La persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase.
>
> Igual obligación se deben entre sí quienes dividen bienes comunes.
>
> La persona obligada responde ante el adquirente y quienes lo sucedan en el derecho por cualquier causa y título.[34]

Por otro lado, el Artículo 1263 del mismo Código dispone que el adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato.[35] Ahora bien, dicho artículo dispone además que la resolución total solo procederá si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien.[36] También que la misma regla aplica en caso de adquisición conjunta de varios bienes. En caso de evicción[37], el referido artículo

---

[33] *Polanco v. Cacique Motors*, 165 DPR 156, 165 (2005).
[34] 31 LPRA sec. 9851.
[35] 31 LPRA sec. 9853.
[36] *Íd.*
[37] El Artículo 1264 establece que "[h]ay evicción cuando se vence al adquirente, por sentencia firme o resolución administrativa inapelable y en virtud de un

establece que el adquirente también tiene derecho al resarcimiento de los daños sufridos, salvo que haya actuado con negligencia. En caso de vicio redhibitorio, el adquirente solo tendrá derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo.[38]

El Artículo 1267 define el vicio redhibitorio como el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él.[39] Dicho artículo añade que también se considera vicio redhibitorio aquel especialmente acordado como tal por las partes, aquel que el transmitente garantiza que no existe, y la ausencia de la calidad convenida.[40] El referido artículo establece, además, que el transmitente responde aun cuando ignore la existencia del vicio redhibitorio.[41]

Por otra parte, el Artículo 1268 del mismo Código dispone que no es vicio redhibitorio el que el adquirente conoce al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes.[42] Para juzgar la aptitud del adquirente, el citado artículo dispone que debe atenderse el deber que tiene de obrar con prudencia y pleno conocimiento de las circunstancias.[43]

Respecto al término prescriptivo para instar una causa de acción por vicio redhibitorio, el Código Civil establece que las acciones para reclamar por vicios redhibitorios prescriben a los seis

---

derecho anterior a la adquisición, de todo o parte del bien adquirido". 31 LPRA sec. 9861.
[38] 31 LPRA sec. 9853.
[39] 31 LPRA sec. 9871.
[40] *Íd.*
[41] *Íd.*
[42] 31 LPRA sec. 9872.
[43] *Íd.*

(6) meses, contados a partir de la entrega del bien transmitido, o desde la última gestión de inteligencia entre las partes.[44]

En resumen, para que proceda una acción de saneamiento por vicios redhibitorios o defectos ocultos, se tienen que cumplir los siguientes requisitos: (1) que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compraventa; (2) que el vicio sea de tal gravedad que haga la cosa impropia para el uso al que se destina o disminuya notablemente su valor de manera que el comprador no habría adquirido la cosa de haberlo conocido; (3) el defecto debe ser preexistente a la venta; y, (4) la acción debe ejercitarse dentro del plazo legal de seis meses contados desde la entrega de la cosa vendida.[45]

Además, en estos casos el Código Civil dispone que el comprador puede optar entre: (1) la acción redhibitoria, que coloca a las partes en la condición que se encontraban antes de la compraventa, mediante la restitución de las prestaciones, o (2) la reducción del precio en una cantidad proporcional.[46]

En acciones por vicios ocultos, cuando el objeto de la compraventa es un vehículo de motor, hay que determinar si los defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso.[47]

Por lo general, el comprador de un vehículo de motor no es un perito de mecánica automotriz. Requerirle a un comprador lego en materia de mecánica que pruebe exactamente qué piezas son las defectuosas sería imponerle una carga de prueba injusta.[48] Asimismo, en cuanto al peso de la prueba sobre la existencia de vicios ocultos, el Tribunal Supremo de Puerto Rico ha opinado que "el comprador de un vehículo de motor –sea éste nuevo o usado– al

---

[44] 31 LPRA sec. 9874.
[45] *Polanco v. Cacique Motors*, supra, pág. 166.
[46] *Íd.*; 31 LPRA sec. 9853.
[47] *Polanco v. Cacique Motors*, supra, pág. 168.
[48] *Íd.*

reclamar por vicios ocultos, sólo estará obligado a demostrar que el automóvil funcionaba normalmente al momento de la compra y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo".[49]

**D.**

En lo que respecta al dolo, éste se define como la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra.[50] De tal forma, para que el dolo produzca la nulidad del negocio jurídico, deberá ser grave y no haber sido empleado por las dos partes contratantes.

Por otro lado, existe otra especie de dolo, denominado como dolo incidental, cuya existencia no produce la nulidad del contrato. Este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación, sino que facilita la celebración del contrato.[51] En el dolo incidental, contrario al dolo grave o causante, existe la voluntad de contratar de la parte perjudicada, pero hay engaño en el modo como se celebra el contrato. En estos casos, el contrato de todas formas se hubiera celebrado, pero no según las mismas condiciones. Por tanto, cualquier engaño con respecto a esas condiciones no erradica por sí solo el consentimiento en la totalidad de la obligación, sino en algún extremo o particularidad de ella.[52] El dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[53]

---

[49] *Polanco v. Cacique Motors*, supra, págs. 168-169.
[50] 31 LPRA sec. 6211.
[51] *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 887 (2008), resuelto bajo la vigencia del Código Civil de 1930, que contenía esencialmente el mismo principio en su Artículo 1222, 31 LPRA sec. 3409 (derogado).
[52] *Íd.*
[53] 31 LPRA sec. 6213.

En nuestro ordenamiento jurídico el dolo no se presume, pero ello no significa necesariamente que tenga que probarse directamente. Puede establecerse mediante inferencia o por evidencia circunstancial.[54] A su vez, el Tribunal Supremo ha reiterado que, cuando el dolo en la formación del contrato sea causante o incidental, corresponde a quien reclama dicha conducta dolosa la responsabilidad de así probarlo.[55]

Finalmente, el Tribunal Supremo ha expresado que en la determinación de si existe dolo que anule el consentimiento se debe considerar una gama de circunstancias, entre otras ellas, la preparación académica de la parte perjudicada, así como su condición social y económica, y las relaciones y el tipo de negocios en que se ocupa.[56] Además, ha manifestado que puede ser que, en un caso particular, el dolo no surja de un simple hecho, sino del conjunto y la evolución de las circunstancias y los manejos engañosos.[57]

### III.

Los primeros tres señalamientos de error versan sobre si las determinaciones de hechos y la apreciación de la prueba desfilada en la vista administrativa justificaban que DACo decretara la nulidad del contrato de compraventa por el fundamento de que había mediado dolo grave en la contratación.[58]

De entrada, según el derecho expuesto, debemos puntualizar que este Tribunal no puede sustituir el juicio o el criterio del DACo por el suyo, a menos que el ente administrativo hubiese actuado de

---

[54] *Colón v. Promo Motors Imports*, 144 DPR 659, 668- 669 (1997), resuelto bajo la anterior legislación atendiendo el mismo principio legal.
[55] *Íd.*, pág. 669.
[56] *García Reyes v. Cruz Auto Corp.*, supra, pág. 887.
[57] *Íd.*
[58] En lo referente al cuarto señalamiento de error, basta señalar que para adjudicar la controversia DACo nada tenía que disponer en cuanto a la calidad o tipo de contrato de financiamiento suscrito entre el Pentagon Federal Credit Union y la Sra. Morales Flores. De hecho, la querella no incluyó alegación alguna en contra de la entidad financiera.

manera arbitraria, ilegal, irrazonable o fuera del marco de los poderes que se le delegaron.

De igual forma, a tenor con la norma jurídica aplicable, hay que apuntar que un consumidor puede instar una acción de saneamiento por vicios ocultos cuando, posterior a la entrega el vehículo, se evidencian defectos de tal naturaleza que haga imposible el uso del objeto, o que el uso haya sido disminuido al extremo de mermar considerablemente la utilidad o el valor de la cosa en cuanto al propósito para el cual fue adquirida. Cónsono con ello, el comprador puede optar entre una acción redhibitoria, en la que se restituyen las prestaciones, o la reducción en precio en una cantidad proporcional.

El análisis del expediente refleja que, acorde con lo determinado por el DACo, el 8 de septiembre de 2022, la Sra. Morales Flores adquirió el vehículo de motor usado marca BMW en el concesionario de Avilés Auto, por el precio de $41,995.00. Como parte de la transacción, dio en intercambio (*trade in*) un vehículo marca Mercedes Benz, por el cual recibió un crédito de $10,000.00, más otros $2,000.00 que pagó de contado, para un crédito total de $12,000.00. Quedó un balance pendiente de pago de $29,995.00, de los cuales Pentagon Federal Credit Union financió $27,187.00. La Sra. Morales Flores también pagó $599.00 por concepto de tablilla. Al momento de la compraventa, los representantes de Avilés Auto coordinaron con la Sra. Morales Flores un servicio para la unidad, consistente de un cambio de pads y discos. Así, la Sra. Morales Flores firmó el contrato de compraventa y se llevó el vehículo del concesionario.

Surge, además, que, a los tres días de haber comprado la unidad, la Sra. Morales Flores notó que los botones del control del asiento del conductor se desprendían. Ésta lo notificó al representante de Avilés Auto, quien le indicó que se inspeccionaría

el asiento cuando ella asistiera a la cita para el servicio de cambio de pads y discos de la unidad. No obstante, llegado el día de la cita para el servicio coordinado, Avilés Auto no brindó el servicio. Así pues, la Sra. Morales Flores continuó usando su unidad y notó que, mientras conducía, el asiento del conductor se movía hacia un lado; es decir, que no se quedaba fijo en una misma posición. La Sra. Morales Flores también informó de esta situación al concesionario.

También surge del expediente, y de las determinaciones del DACo, que, cuando la Sra. Morales Flores dejó la unidad en Avilés Auto para el cambio de pads y discos, solicitó que se verificara el asiento del conductor, el ruido que provenía de la parte trasera del vehículo y el bumper. Ello obedeció a que ella había encontrado en la gaveta frente al asiento del pasajero, unos documentos con fecha de febrero de 2021, que indicaban que la unidad había sido impactada y reparada. El referido documento lee, en lo pertinente, que "[s]e procedió a remover el estribo lado derecho, encontrando cablería de antena lado del pasajero mutilada. Se realizó reparación de cablería de antena lado del pasajero. Se borraron las faltas, todo ok al momento".[59]

Luego de que Avilés Auto le entregara el automóvil a la Sra. Morales Flores, y mientras ésta lo manejaba, sintió que la unidad brincaba. Al llegar a su residencia, verificó el vehículo y notó que la parte de atrás estaba "tumbada". La Sra. Morales Flores informó de la situación al concesionario y envió el vehículo de remolque a Avilés Auto para reparación. Cuando se le notificó que la unidad estaba lista y ella acudió a recogerla, la encendió y se dio cuenta que ésta tenía prendida las luces de advertencia en el tablero correspondientes a los pads y discos. La Sra. Morales Flores no se

---

[59] Véase, *Invoice*, Apéndice del recurso, págs. 112-116, a la pág. 113.

llevó el vehículo, hasta el día siguiente cuando Avilés Auto se lo entregó reparado de pads discos y parte trasera "tumbada".

Por otro lado, los hallazgos de la inspección realizada por el técnico del DACo el 8 de marzo de 2023 evidenciaron que: "[e]l vehículo estaba en poder de los querellantes con marbete vigente. Solicité elevarlo en un pino hidráulico de taller y por debajo se encontró todo normal. Encontré que el vehículo aparentaba haber sido intervenido de colisión. El guardalodos pasajero, puerta pasajera, y parachoques delantero de goma demostraban "Over Spray" y "Fish Eyes" de pintura. También mostraba descuadre entre puerta, guardalodos, parachoques y pilar de la capota. También salimos [a] hacer una prueba de carretera donde la suspensión no mostr[ó] ruidos y tampoco mal funcionamiento". Como opinión pericial, el inspector del DACo indicó que: "[e]ste vehículo fue intervenido en pintura y piezas instaladas mal adheridas, pero no encontré reparación estructural del monocasco".[60]

El expediente también refleja que Avilés Auto no le informó al momento de la compraventa, de manera verbal o escrita, que la unidad había sido impactada y reparada.[61] Sin embargo, durante la vista administrativa, la Sra. Morales Flores declaró que si le hubieran dicho que el vehículo había sido impactado de igual forma "lo hubiera aceptado, pero no fue así".[62]

Conforme lo anterior, DACo determinó que por motivo de que Avilés Auto había incumplido su deber de notificar al momento de la compraventa que la unidad había sido impactada y reparada, el consentimiento de la Sra. Morales Flores estuvo viciado por falta de información y que ello constituyó dolo grave en la contratación.

---

[60] *Informe de inspección. Íd.,* págs. 54-56.
[61] Transcripción de la vista administrativa del 6 de septiembre de 2023. *Íd.,* págs. 68-105, a la pág. 100.
[62] *Íd.*

Avilés Auto alega que DACo incidió al decretar la nulidad del contrato de compraventa porque la Sra. Morales Flores no demostró que hubiera mediado dolo en la contratación. Ello pues, porque la prueba había demostrado que el impacto que recibió el vehículo no afectó el funcionamiento de éste. Para sustentar su planteamiento, Avilés Auto arguyó que si bien del Exhibit VI surgía que el auto recibió un impacto en el lado delantero derecho – que conllevó reparaciones en la cablería de la antena del lado derecho del pasajero - el informe de inspección del técnico del DACo había corroborado que el vehículo no sufrió reparación del monocasco y, además, que durante la prueba de carretera la suspensión del auto no había mostrado ruidos o mal funcionamiento.

Por ello, Avilés Auto arguye que el remedio concedido, entiéndase, la resolución del contrato no era el apropiado, pues el no haber informado a la Sra. Morales Flores previo a la compraventa que la unidad había sido impactada o reparada en la cablería del lado delantero derecho no incidió en el consentimiento prestado por ésta para la transacción. Ello debido a que ella adquirió el vehículo para utilizarlo como medio de transportación y éste no había presentado ningún fallo mecánico que le impidiera ejercer el referido uso.

Según esbozamos anteriormente, el Código Civil define el dolo grave como "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado".[63] De otra parte, "[e]l dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado".[64] Por consiguiente, para que el dolo sea considerado grave y produzca la nulidad del contrato éste debe ser tal que haya viciado el consentimiento de la Sra. Morales Flores.

---

[63] 31 LPRA sec. 6211.
[64] 31 LPRA sec. 6213.

Conforme surge de la transcripción de la vista administrativa, la Sra. Morales Flores declaró que el vehículo estuvo en reparaciones en el concesionario Avilés Auto por 15 días. Luego, y desde noviembre de 2022, el vehículo permanece guardado en su hogar. Solamente lo ha utilizado para llevarlo a inspección y mantenimiento. Según testificó, en dichas ocasiones, el automóvil no mostró ninguna luz del panel de advertencias encendida.[65] Incluso, manifestó que esas veces que lo ha conducido, la unidad se "siente bien".[66]

En el contrainterrogatorio, la Sra. Morales Flores reconoció que el informe de inspección del técnico del DACo no menciona algún defecto en el asiento del conductor, por lo tanto, admitió que ese defecto fue corregido.[67] Igualmente, la Sra. Morales Flores aceptó que el informe de inspección del DACo de 8 de marzo de 2023 reflejaba que el inspector no encontró reparación estructural en el automóvil y que, en lo relativo al funcionamiento de la unidad, el inspector encontró todo normal.[68] Por consiguiente, para la fecha del informe de inspección, todos los defectos de la unidad se habían corregido.

Además, la Sra. Morales Flores no presentó prueba pericial que demostrara que el carro no se pudiera utilizar.[69] De hecho, del documento de CARFAX no surge que el vehículo hubiera sufrido una colisión que afectara alguno de sus elementos estructurales.[70] En adición, la Sra. Morales Flores declaró que, si le hubieran informado que el vehículo fue impactado, de igual forma lo hubiera aceptado;[71] por lo que dicha omisión no afectó o tuvo una influencia decisiva y

---

[65] Transcripción de la vista administrativa del 6 de septiembre de 2023. Apéndice del recurso, págs. 68-105, a la pág. 78.
[66] *Íd.,* pág. 79.
[67] *Íd.,* pág. 88.
[68] *Íd.,* pág. 91.
[69] *Íd.,* pág. 92.
[70] *Íd.,* págs. 117-123.
[71] Supra, nota al calce 62.

el contrato de todas formas se habría celebrado, aunque no conforme las misma condiciones.

Por tanto, al examinar la transcripción de la prueba oral y los documentos ante nuestra consideración, concluimos que no medió dolo grave, de forma que se produjera la nulidad del contrato en controversia, sino que hubo dolo incidental. Ciertamente, la unidad que la Sra. Morales Flores adquirió de Avilés Auto presentó varios desperfectos luego de la compraventa que, si bien ocasionaron molestias, no hicieron del automóvil uno impropio para su uso. En efecto, el informe realizado por el inspector del DACo corroboró que dichos desperfectos fueron reparados, por lo cual, no fueron de tal gravedad que obligaran a decretar la nulidad de la compraventa y la consecuente resolución del contrato. Además, la Sra. Morales Flores ha utilizado el vehículo para llevarlo a inspección y mantenimiento sin que éste mostrara alguna luz del panel de advertencias encendida.[72] Incluso, la Sra. Morales Flores aceptó dijo la unidad se "siente bien" mientras la conduce.

En virtud de lo anterior, se valida el negocio jurídico de compraventa objeto del pleito y modificamos el dictamen recurrido para dejar sin efecto la determinación del DACO que decretó la nulidad del contrato suscrito entre la Sra. Morales Flores y Avilés Auto y ordenó al concesionario y a Univeral Insurance Company, a solidariamente reembolsar a la compradora la suma de $10,000.00 por el automóvil dado en *trade in,* el pronto pago de $2,808.00, el costo de la póliza de automóvil personal ($1,087.00), así como todas las mensualidades pagadas por ésta por concepto del financiamiento del vehículo y el balance de cancelación de dicho préstamo.

---

[72] Transcripción de la vista administrativa del 6 de septiembre de 2023. Apéndice del recurso, págs. 68-105, a la pág. 78.

No obstante, en virtud de la Regla 20 del Reglamento Núm. 9158 - que prohíbe que el concesionario cobre al comprador una cuantía por concepto de traspaso o gestión relacionados a un vehículo de motor usado - ratificamos la decisión del DACo de ordenar que se le devolviera a la Sra. Morales Flores $599.00 por el cobro indebido de la tablilla del vehículo adquirido.

Así pues, ante nuestra conclusión de que se configuró dolo incidental y aplicando la norma jurídica previamente esbozada, procede, como remedio, indemnizar a la Sra. Morales Flores por los daños y perjuicios resultantes del dolo incurrido. En esta gestión, reconocemos que, si bien en la querella enmendada la Sra. Morales Flores no consignó expresamente una solicitud de daños, en ella sí reclamó cualquier otro remedio que procediera en derecho.[73] Por consiguiente, devolvemos el caso al DACo para que, de conformidad con nuestro pronunciamiento y la prueba presentada, fije la suma correspondiente por los daños y perjuicios personales sufridos por la Sra. Morales Flores.[74] Lo anterior conforme resuelto en *Aguilú Delgado v. P.R. Parking System,* 122 DPR 261 (1988) y al amparo de *Santiago Montañez v. Fresenius Medical*, 195 DPR 476 (2016).

**IV.**

Por los fundamentos que anteceden, modificamos la resolución recurrida para dejar sin efecto la determinación del DACO que decretó la nulidad del contrato suscrito entre la Sra. Morales Flores y Avilés Auto y concluir que Avilés Auto incurrió el dolo incidental. Devolvemos el caso al DACo para que, de conformidad con nuestros pronunciamientos y la prueba

---

[73] *Íd.*, pág. 64. La Regla 27.1 del *Reglamento de Procedimientos Adjudicativos* del DACo, Reglamento Número 8034, estipula que "[t]oda resolución otorgará el remedio que en derecho proceda aun cuando la parte querellante no lo haya solicitado".

[74] A modo persuasivo, véase, *Bella Retail Group, Inc. v Departamento de Asuntos del Consumidor*, KLRA200300886.

presentada, fije la suma correspondiente por los daños y perjuicios personales sufridos por la Sra. Morales Flores.

Así modificado, se confirma los demás extremos de la resolución recurrida, quedando obligados de manera solidaria Avilés Auto y Universal Insurance Company a devolver a la Sra. Morales Flores la partida de $599.00 por el cobro indebido de la tablilla del vehículo de motor usado adquirido.

Se deja sin efecto nuestra resolución emitida el 9 de febrero de 2024, mediante la cual decretamos la paralización de los efectos de la resolución recurrida.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Cintrón Cintrón concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones