Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LUIS D. IRIZARRY MONTALVO<br><br>Querellante-Recurrido<br><br>VS.<br><br>EURO JAPÓN DISTRIBUTORS, INC.<br><br>Querellado-Recurrente | KLRA202400222 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. MAY-2021-0002594<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 9 de octubre de 2024.

Comparece Euro Japón Distributors, Inc. (en adelante "parte Recurrente" o "Euro Japón") mediante *Recurso de Revisión.* Por medio de este, solicita que se revoque la *Resolución* emitida el 26 de marzo de 2024, notificada el 27 del mismo mes y año por el Departamento de Asuntos del Consumidor (en adelante "DACo"). En el aludido dictamen, el DACo ordenó a la parte Recurrente que, dentro del término de treinta (30) días contados a partir de la notificación de la *Resolución*, entregara a Luis D. Irizarry Montalvo, (en adelante "parte Recurrida" o "Sr. Irizarry Montalvo"), la cantidad de $6,700.00 más el interés legal prevaleciente, según fijado por la Oficina del Comisionado de Instituciones Financieras.

Luego de examinada la transcripción presentada y el recurso que nos ocupa, confirmamos la *Resolución* recurrida.

### I

El 23 de julio de 2021, el Sr. Irizarry Montalvo presentó una querella ante el DACo contra Euro Japón. En esencia, alegó que compró un auto en el dealer Euro Japón ubicado en Bayamón y que

Número Identificador

SEN2024 _____

el vehículo empezó a confrontar problemas el mismo día. También, sostuvo que contactó al vendedor y este le indicó que no tenía garantía, pero que iba a tratar de resolver el asunto. Sin embargo, no lo llamaron posteriormente.

El 8 de noviembre de 2023, el DACo inspeccionó el vehículo en controversia, a través del Investigador de Querellas Auto, Aneudi Ríos Feliciano. Luego, el 17 de noviembre de 2023 el DACo notificó su informe de inspección, del cual surge que "el motor de combustión original de la unidad se rompió debido a que la cadena interna se partió y eso provoc[ó] que impactara la tapa de cadena del motor y le hiciera un agujero".[1] Además, el inspector concluyó que el motor no se rompió por falta de mantenimiento de aceite, sino por causa mecánicas o movibles del interior del motor. El referido informe no fue objetado.

El 13 de marzo de 2024, el DACo celebró una vista administrativa. Evaluadas las posturas presentadas por las partes en esta, el DACo emitió una *Resolución* el 26 de marzo de 2024. Mediante dicho dictamen, le ordenó a la parte Recurrente que, dentro del término de treinta (30) días contados a partir de la notificación de la *Resolución,* entregara a la parte Recurrida la cantidad de $6,700.00 más el interés legal prevaleciente según fijado por la Oficina del Comisionado de Instituciones Financieras. La agencia formuló las siguientes determinaciones de hechos:

1. El día 20 de abril de 2021, la parte querellante adquirió del dealer querellado, el vehículo de motor usado marca Audi modelo Q7 del año 2011, con un millaje de 143,437.

2. La parte querellante, pagó la cantidad de $12,500.00 a través de cheque.

3. Por el auto tener más de 100,000 millas, el querellado no otorgó garantía.

4. Al momento de adquirir el vehículo de motor, el querellante probó el mismo en una corrida cortita. En

---

[1] Anejo XIV del recurso, pág. 44.

ese momento, el auto no presentó síntomas de problemas.

5. Luego de adquirido el auto, la parte querellante condujo el auto desde el dealer querellado, ubicado en el pueblo de Bayamón, hasta su residencia en el pueblo de Lajas. Mientras el querellante se dirigía hacia su residencia sintió que el auto presentaba problemas, el mismo "jaloneaba", "le daba a la gasolina y no corría".

6. Al llegar a su residencia, el querellante se comunicó con el vendedor de apellido Vázquez. El querellante le indicó al vendedor, lo que había experimentado con el auto de camino a su casa, a lo que el Sr. Vázquez le contestó que el vehículo no tenía garantía, que vería si se podía hacer algo, que de servicio se comunicaría con el querellante.

7. Al día siguiente de la compra, el querellante sintió un golpe al prender el auto, y botó aceite, el querellante sintió que el golpe provenía del motor. El querellante se comunicó con el vendedor, Sr. Vázquez, para informarle lo que sucedió con el auto, el vendedor, le indicó que no se podía hacer nada.

8. Personal de servicio, del dealer querellado, no se comunicaron con el querellante, como le había informado el vendedor, Sr. Vázquez que lo harían.

9. Ese día, el querellante llevó en servicio de grúa el auto al mecánico Willie Ferrer Nieves, para que examinara el auto.

10. El mecánico Willie Ferrer Nieves, dueño del taller Peñuelas Auto Services, le colocó el scanner al auto y probó el vehículo medio kilómetro. El auto hizo un ruido y se apagó, lo "starteo" y no tenía compresión, y estaba botando aceite. El Sr. Ferrer determinó que el motor estaba roto.

11. El día 23 de julio de 2021, el querellante presentó la querella de epígrafe.

12. Luego de presentada la querella, la parte querellada no se comunicó con el querellante.

13. El querellante adquirió un motor para reemplazar el existente que poseía el auto, y lo llevó al taller del Sr. Ferrer. El querellante pagó $5,200.00 por el motor adquirido.

14. El día 9 de septiembre de 2022, este Departamento llevó a cabo una inspección del auto en controversia, a través del Técnico Automotriz, Aneudi Ríos.

15. El día 20 de octubre de 2022, el Técnico emitió el informe en el cual señaló entre otras cosas los siguiente:

"Resultados de la Inspección

El Taller Peñuelas Auto Services indica que se está trabajando con la unidad, reemplazándole el motor por otro. Además, indica que los desperfectos en la transmisión automática, que fue por lo que el querellante trajo la unidad; no se han podido verificar y diagnosticar. El querellante solicita la devolución del dinero invertido en las reparaciones y gastos adicionales que se presenten. El Rep. del querellado llevará la información recopilada en la inspección al dueño; para ver si se puede llegar a algún tipo de acuerdo. Las partes notificarán a DACO dentro de los 15 días a partir de la notificación de este informe si se llegó o no, a algún tipo de acuerdo. Además, si no se llegó a ningún acuerdo, el querellante Luis Irizarry deberá notificar a DACO Mayagüez cuando la unidad esté en funcionamiento para realizar una inspección de los alegatos en la querella.

Opinión Pericial

Hasta que el motor no sea instalado, no se puede diagnosticar los fallos en la unidad."

16. El día 23 de junio de 2023, este Departamento llevó a cabo una re-inspección del auto en controversia, a través del Técnico Automotriz, Aneudi Ríos.

17. El día 11 de julio de 2023, el Técnico emitió el informe en el cual señaló entre otras cosas lo siguiente:

"Resultados de la Inspección

El Rep. del Taller Peñuelas Auto Services indica que el motor está instalado, pero falta por instalar: los radiadores, plásticos, grill, focos delanteros, parachoques delantero, abanicos; entre otras cosas. El Taller indica que la unidad puede estar lista para finales del mes de julio-2023. No se pudo realizar inspección."

18. El día 8 de noviembre de 2023, este Departamento llevó a cabo otra re-inspección del auto en controversia, por conducto del Técnico Automotriz, Aneudi Ríos.

19. El día 8 de noviembre de 2023, el Técnico admitió el informe en el cual señaló entre otras cosas los siguiente: "Resultados de la inspección:
El día 8 de noviembre del 2023 a las 10:00 AM se celebró una inspección conjunta en las facilidades del Taller Peñuelas Auto Services. Al momento de la misma la unidad se encontraba levantada en gatas y le faltaban piezas por instalar al motor de combustión para poder terminar el trabajo.

Piezas que faltan de instalar para poder terminar el trabajo de reemplazo de motor de combustión: (se presentaron 4 fotos)

El técnico automotriz indicó que ya había instalado el motor y se había encendido el octubre 2023, pero el motor salió liquiando por el retenedor de la turbina o

convertidor de la transmisión y tuvo que removerlo nuevamente para corregir el liqueo. El técnico automotriz indicó que la unidad estaría terminada entre un mes.

Opinión Pericial

Se recomienda instalar las piezas que faltan tales como los catalíticos, radiador, compresor de aire acondicionado, alternador, parilla de al frente, parachoques delantero, soporte que aguanta el radiador, focos delanteros, motor y vías del parabrisas, guardafangos, caja del filtro del aire, correa serpentina, abanicos del radiador, condensador de aire y entre otras mínimas cosas.

El motor de combustión original de la unidad se rompió debido a que la cadena interna se partió y esto provocó que impactara la tapa de cadena del motor le hiciera un agujero.

Anejo de la rotura del motor de combustión: (una foto)

Además[,] se removió el "crank" del motor para verificar el cedazo que se encuentra en el interior del "crank" y se observó que se encontraba limpio. A mi entender significa que el motor no rompió por falta de mantenimiento de aceite. El motor rompió por causa mecánicas o movibles del interior del motor.

Se recomienda registrar el motor reemplazado en las oficinas del CESCO.

Anejo del cedazo limpio del motor de combustión: (una foto)

Estimado

Piezas:  Motor de combustión Costo: $5,200.00
Labor:  Costo $1,500.00
Total: $6,700.00

Observaciones:

Querellante indic[ó] que la unidad ingres[ó] al taller Peñuelas Auto Services en agosto 2021, y el motor de combustión de remplazo lleg[ó] en septiembre 2021. No se pudo tomar el millaje de la unidad, ya que la cablería del área del motor est[á] desconectada. Al momento de la inspección la unidad no poseía marbete vigente. Obra en el expediente recibo de la compra del motor de combustión."

20. El querellante no utilizó ni utiliza el vehículo de motor adquirido.

21. A la fecha de la vista administrativa, el auto permanece en el Taller Peñuelas Auto Services, donde ya se le instaló el motor, sin embargo[,] no se ha prendido el auto aún.

22. El Sr. Willie Ferrer estuvo atrasado en la reparación del auto, debido a una situación de salud que lo mantuvo fuera del taller por espacio de un año y medio.[2]

En desacuerdo con la determinación del DACo, el 29 de abril de 2024 compareció ante nos la parte Recurrente imputándole a la agencia lo siguiente:

**Erró la Honorable Agencia Administrativa al concluir que aplican a estos hechos la acción por vicio oculto o acción redhibitoria contemplada en el [C]ódigo Civil para situaciones de compraventa de bienes.**

**II**

**-A-**

El DACo es el organismo administrativo cuyo propósito principal es vindicar, proteger e implementar los derechos de las personas consumidoras en nuestra jurisdicción. Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 LPRA sec. 341b; *Polanco v. Cacique Motors,* 165 DPR 156, 163 (2005). De conformidad con la Ley Núm. 5 del 23 de abril de 1973, según enmendada, la Ley Núm. 7 de 24 de septiembre de 1979, según enmendada, conocida como la Ley de Garantías de Vehículos de Motor, y por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, el DACo aprobó el Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 7159 de 1 de junio de 2006 (en adelante "Reglamento"). La Regla 26 del Reglamento establece lo siguiente:

26.1--Se prohíbe vender un vehículo de motor usado sin garantía.
26.2--Todo vendedor de vehículos de motor usados, concederá garantía, en piezas y mano de obra. Esta garantía será a base del millaje recorrido y según la siguiente escala:
a) Hasta 36,000 millas--cuatro (4) meses o cuatro mil (4,000) millas, lo que ocurra primero.

---

[2] Las siguientes determinaciones de hechos son una transcripción textual de la *Resolución* del DACo.

b) Más de 36,000 millas y hasta 50,000 millas--tres (3) meses o tres mil (3,000) millas, lo que ocurra primero.
c) Más de 50,000 millas y hasta 100,000 millas--dos (2) meses o dos (2,000) millas, lo que ocurra primero.
26.3--El comprador tendrá derecho a que la unidad sea inspeccionada por un mecánico de su preferencia, antes de comprar el vehículo usado. Regla 26, Reglamento Núm. 7159 de 6 de junio de 2006.

Por su parte, la Regla 37 del Reglamento dispone que:

Nada de lo dispuesto en este Reglamento limitará en forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes generales o especiales del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción, **saneamiento por vicios ocultos o redhibitoria** y cualesquiera otras que reconozca el Código Civil de Puerto Rico. *Íd.* (énfasis suplido).

En ese sentido, "las determinaciones del DACo relacionadas con estos asuntos deben ser cónsonas con los artículos del Código Civil sobre las acciones de saneamiento en la compraventa". *Polanco v. Cacique Motors*, 165 DPR 156, 165 (2005). Añadimos que también deben estar en armonía con la jurisprudencia interpretativa de éstas. *Domínguez Talavera v. Caguas Expressway Motors*, 148 DPR 387, 395 (1999).

La llamada garantía legal que regula el Código Civil establece que aquel que transmite un bien a título oneroso está obligado a responder por los defectos ocultos del bien, aunque los ignorase. Código Civil, ed. 2020, Art. 1261, 31 LPRA sec. 9851. Una vez se activa esta obligación, "el adquiriente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato". Código Civil, ed. 2020, Art. 1263, 31 LPRA sec. 9853.

Cónsono con lo anterior, los artículos 1267, al 1270, 31 LPRA secs. 9871-9874, respectivamente, regulan los vicios redhibitorios. El Art. 1267 establece que:

Es vicio redhibitorio el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo

conocido, el adquirente no lo habría adquirido o habría dado menos por él.

También se considera vicio redhibitorio:

(a) aquel especialmente acordado como tal por las partes,
(b) aquel que el transmitente garantiza que no existe, y
(c) la ausencia de la calidad convenida.

El transmitente responde aunque ignore la existencia del vicio redhibitorio. 31 LPRA sec. 9871.

A tenor con el Art. 1287 del Código Civil, 31 LPRA sec. 991, el vendedor está obligado a:

. . . . . . . .

(c) garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido. Una disminución insignificante del valor o la aptitud no se toma en cuenta.
        Cuando un defecto principal se descubre dentro del período de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador.
        **La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental;**

. . . . . . . .

En el caso de la acción para reclamar por vicios redhibitorios debe ejercitarse en el plazo de seis meses, contados desde la entrega de la cosa vendida o desde la última gestión de inteligencia entre las partes. Art. 1270 del Código Civil, 31 LPRA sec. 9874.

Por otro lado, sobre los contratos de garantías expresas el Tribunal Supremo ha dicho que:

[S]i bien el Código Civil es supletorio a lo convenido por las partes, siempre que éstas no contraten en violación de la ley, al interpretar y aplicar dichos contratos y sus garantías tendremos en cuenta que esos son contratos de adhesión, en los cuales el comprador tiene muy poco o nada que decir. Su consentimiento a ellos, una vez hecha la decisión de comprar determinada marca y modelo del automóvil, o de la máquina de que se trate, es casi ninguno. (Citas omitidas.) *Ferrer Delgado v. General Motors Corporation*, 100 DPR 246, 257 (1971).

Al respecto, un panel hermano en el caso *Pantoja Arroyo v. Alberic Colón Auto Sales, Inc.,* caso número KLRA200400984, estableció que lo mismo ocurre con la garantía "as is" y la alegada rebaja de precio a la que el consumidor se adhiere. Aun en esos casos **el consumidor confía en que "tiene una garantía implícita de que el vehículo funcionará adecuadamente por un tiempo razonable, si no la compra sería de chatarra".** *Íd.*

-B-

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han delegado por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá

cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Super Asphalt v. AFI y otro, supra,* pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otro, supra,* pág. 820; *Graciani Rodríguez v. Garaje Isla Verde, supra,* pág. 127; *Torres Rivera v. Policía de PR, supra,* pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), "estableció el marco de revisión judicial de las determinaciones de las agencias administrativas". *Rolón Martínez v. Supte. Policía, supra,* pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud, supra*; *Torres Rivera v. Policía de PR, supra,* págs. 626-627; *Batista, Nobbe v. Jta. Directores, supra,* pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir

cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía, supra*, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otro, supra.*

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía, supra*, pág. 36; *Torres Rivera v. Policía de PR, supra*, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR, supra*, págs. 627-628; *OEG v. Martínez Giraud, supra.*

Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud, supra,* pág. 11.

Aclarado el alcance de nuestra función revisora, evaluemos los señalamientos de error indicados por la parte recurrente.

**III**

En el presente recurso, Euro Japón señala que erró el DACo al concluir que aplican a estos hechos la acción por vicio oculto o acción redhibitoria contemplada en el Código Civil para situaciones de compraventa de bienes. Específicamente, arguye que la Regla 26 del Reglamento, *supra*, no establece garantía para vehículos con millaje superior a 100,000 millas al momento de la venta. Entonces, puesto que el vehículo de motor en controversia tenía 143,437 millas al momento de la compraventa, entiende que no le cobijaba garantía alguna. Así también, sostiene que el roto en el motor ocurrió luego de que el vehículo salió del concesionario.

Tal y como concluyó el DACo, por el millaje del vehículo Euro Japón no estaba obligado por el Reglamento, *supra*, a concederle una garantía a la parte Recurrida. No obstante, sí estaba obligado a responder por los vicios ocultos o redhibitorios tras la venta del vehículo de motor.

Como establecimos anteriormente, la Regla 37 del Reglamento, *supra*, dispone que no se limitará el derecho del consumidor de ejercer las acciones de saneamiento por vicios ocultos o redhibitoria reconocidas por el Código Civil de Puerto Rico. Siendo así, el recurso de autos se rige tanto por el Reglamento precitado, como por las normas que regulan la acción redhibitoria del Código Civil.

Por su parte, la parte Recurrente no impugnó el informe del investigador del DACo que resultó de la inspección del vehículo. A base del informe, cuyas conclusiones acogió la agencia como hechos probados, por no haberse impugnado, no hay duda de que el vehículo adolecía de un vicio mayor en el motor, que no fue evidente para el comprador al momento de la compra y que ha hecho la cosa

inservible para éste. De haberlo conocido, la parte Recurrida no hubiera adquirido el vehículo para su uso personal. El DACo concluyó, además, que la parte Recurrida no renunció válidamente a la acción redhibitoria. A su vez, la manifestación del vicio en el motor el mismo día en que se efectuó la compraventa del vehículo abona al hecho de que presentaba una condición que lo hacía inservible para el uso ordinario.

En virtud de las normas reseñadas, resolvemos que el Sr. Irizarry Montalvo tenía derecho a reclamar el saneamiento de los vicios ocultos que presentó el vehículo de motor usado que fue vendido por Euro Japón, específicamente por los defectos que mostró en el motor. También, el remedio concedido por el DACo fue uno adecuado: entregar la cantidad de $6,700.00 por concepto de la compra e instalación del motor, más el interés legal prevaleciente según fijado por la Oficina del Comisionado de Instituciones Financieras. En conclusión, al no encontrar que las determinaciones del DACo fueron irrazonables, ilegales o contrarias a derecho, le otorgamos deferencia.

**IV**

Por todos los fundamentos antes mencionados, los cuales hacemos formar parte de este recurso, confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones