DIOSDADA POLANCO LÓPEZ, querellante, *v.* CACIQUE MOTORS, FIRST BANK PUERTO RICO, recurridos, y EL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, peticionario.

*Número:* CC-2002-894 *Resuelto:* 30 de junio de 2005

*José A. Maisonet Trinidad,* abogado de la parte peticionaria; *Antonio Rodas Viñas* y *Teresa Jiménez Meléndez,* abogados de la parte recurrida.

PER CURIAM: El Departamento de Asuntos del Consumidor (D.A.Co.) nos solicita que revisemos una sentencia del

Tribunal de Apelaciones mediante la cual se dejó sin efecto una decisión de la agencia, que ordenó la resolución de un contrato de compraventa de un vehículo de motor usado. Debemos determinar si, tal y como resolvió el tribunal *a quo*, para que proceda la resolución del contrato corresponde a la parte compradora demostrar que el vehículo adolecía de los defectos al momento de la compraventa o si basta con el estándar de prueba establecido por este Tribunal para los vehículos nuevos, que sólo exige que el comprador demuestre que al momento de la compraventa el vehículo funcionaba normalmente. Resolvemos que el estándar jurídico para resolver un contrato de compraventa de vehículos de motor nuevos es igualmente aplicable a los vehículos usados, por cuanto procede revocar la sentencia emitida por el Tribunal de Apelaciones y confirmar la resolución de D.A.Co.

I

La Sra. Diosdada Polanco López compró un vehículo de motor usado a Cacique Motors (Cacique) el 22 de agosto de 2001. El precio de venta del vehículo fue de $7,500, del cual se pagó un pronto de $2,500 y se financió el monto restante a través de Firstbank de Puerto Rico (First Bank). Al momento de la compraventa, el vehículo había recorrido 65,851 millas, por lo que el vendedor le otorgó a la compradora un mes de garantía o mil millas, lo primero que ocurriera, conforme requiere el Reglamento de Vehículos de Motor del Departamento de Asuntos del Consumidor.[1] Art. 24 del Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797 de 30 de septiembre de 1992 (Reglamento).

Alegadamente, para el mes de septiembre de 2001 la señora Polanco notó fallas en la transmisión del vehículo y

---

[1] El Art. 24 del Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 4797 de 30 de septiembre de 1992, provee sobre el término y la naturaleza de la garantía en los vehículos de motor usados, de acuerdo con el millaje recorrido al momento de la compraventa.

procedió a comunicarlas al vendedor para que fueran reparadas. El concesionario, por su parte, negó responsabilidad.[2] En el mes de diciembre de 2001, a pesar de haberse corroborado el defecto mediante una prueba de carretera, Cacique le notificó a la compradora que no asumiría los costos de reparación por haberse vencido ya el término de garantía. El vendedor se ofreció a reparar el vehículo sólo si la compradora asumía los costos. El vehículo fue llevado al Garaje Rubén, donde permaneció por varios meses con la transmisión desmontada, dado que la señora Polanco no podía pagar la reparación. Finalmente la compradora pagó $300 por la labor de desmontar la transmisión y se llevó el vehículo a su casa sin reparar, utilizando una grúa.

Así las cosas, en enero de 2002 la señora Polanco presentó una querella ante D.A.Co., en la cual solicitó la resolución del contrato. D.A.Co. inspeccionó el vehículo y llevó a cabo una vista administrativa. En mayo de 2002 D.A.Co. emitió una orden en la que decretó la resolución del contrato de compraventa. En síntesis, determinó que la querellante no habría adquirido el vehículo de conocer que éste adolecía de defectos mecánicos; que el defecto hacía el vehículo impropio para su uso, y que, según las disposiciones del Código Civil sobre saneamiento por vicios ocultos en la compraventa, Arts. 1373 a 1388 (31 L.P.R.A. secs. 3841 a 3856), procedía la resolución del contrato de compraventa. Ordenó al concesionario que recogiera el vehículo, reembolsara el pronto y las mensualidades pagadas y relevara a la querellante del contrato de financiamiento con Firstbank.

Inconforme con la determinación administrativa, Cacique solicitó una oportuna revisión ante el Tribunal de Apelaciones. Adujo que D.A.Co. había errado al ignorar su

---

[2] Del expediente no surge la fecha específica en la que se notó el fallo mecánico ni la fecha en la que se le reclamó a Cacique Motors (Cacique) por los defectos del vehículo. Según señala Cacique, la señora Polanco primero les notificó los defectos en noviembre de 2001, ya vencida la garantía pactada. Este hecho no fue refutado por la querellante.

propio Reglamento de Garantías de Vehículos de Motor y al no reconocer el acuerdo de garantía pactado entre las partes. El foro intermedio revocó a D.A.Co. por entender que la determinación administrativa fue arbitraria y caprichosa, ya que el defecto en la transmisión surgió luego del mes de la compraventa; que la agencia no hizo determinaciones sobre las millas corridas al momento de identificarse el desperfecto, y que ante los hechos que obran en el expediente era improcedente determinar que los defectos del vehículo fueron preexistentes a la compraventa. El Tribunal de Apelaciones indicó en su sentencia también que en los casos de vehículos de motor con vicios ocultos, le corresponde *"al comprador demostrar que el vehículo que compró tenía el vicio oculto* desde antes de la compraventa y que la parte querellada tuvo oportunidad de corregir el defecto pero no lo corrigió o no pudo corregirlo".

D.A.Co. acudió ante nosotros de la determinación del foro apelativo. Nos señaló que, contrario a la apreciación del Tribunal de Apelaciones, no corresponde al comprador el peso de probar que el vehículo tenía el vicio antes de la compraventa, sino que basta con que el comprador pruebe que el vehículo comprado funcionaba normalmente. Expedimos el recurso de *certiorari* y con el beneficio de la comparecencia de ambas partes pasamos a resolver.

## II

Mediante el Art. 3 de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973 (3 L.P.R.A. sec. 341b), se creó a D.A.Co. con el propósito principal de vindicar, proteger e implementar los derechos de los consumidores. Posteriormente, en virtud de la Ley de Garantías de Vehículos de Motor, Ley Núm. 7 de 24 de septiembre de 1979 (10 L.P.R.A. sec. 2051 *et seq.*), se promulgó el Reglamento como mecanismo para proteger adecuadamente a los consumidores de Puerto Rico en la adquisición de vehículos de motor; asegurarles que estos vehículos sirvan los propósitos para los cuales fueron ad-

quiridos, y que reúnan las condiciones necesarias para garantizar al comprador la protección de vida y propiedad. Art. 2 del Reglamento, *supra*. El Reglamento también procuró prevenir las prácticas ilícitas en las ventas de vehículos de motor. Íd.

■ Este Reglamento aplica a toda persona —natural o jurídica— que se dedique a la *venta de vehículos de motor nuevos o usados* en Puerto Rico (Art. 3 del Reglamento, *supra)* y se debe interpretar liberalmente a favor del consumidor (Art. 4 del Reglamento, *supra*). Es evidente que el Reglamento abarca tanto los vehículos de motor nuevos como los usados; en efecto, una lectura de éste claramente lo refleja. Tiene disposiciones específicas dirigidas a cada uno de ellos.

■ En lo que nos ocupa —los vehículos de motor usados— el Art. 24.1 del Reglamento, según renumerado, dispone que

> [t]odo vendedor de vehículos de motor usados, concederá garantía, en piezas y mano de obra. Si el comprador desea dicha garantía, la misma será por escrito y conforme a lo establecido en este Reglamento. Esta garantía será a base del millaje recorrido y según la siguiente escala: ... c) Más de 50,000 millas hasta 100,000 millas —un (1) mes o mil (1,000) millas, lo que ocurra primero. Enmienda Núm. 1 al Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 5361 del Departamento de Asuntos del Consumidor de 12 de enero de 1996.

En su próximo inciso el referido artículo provee, como excepción, que la disposición anterior no aplicará cuando el vendedor y el comprador hayan llegado a un acuerdo mediante el cual el consumidor renuncie de forma consciente, informada y por escrito de su derecho a la correspondiente garantía. Art. 24.2 del Reglamento.

■ En lo que respecta a los defectos del vehículo, si el comprador así lo desea, D.A.Co. tiene la potestad de decretar la resolución del contrato o reducir proporcionalmente su precio de venta —de acuerdo con las disposiciones del Código Civil— en aquellos casos en que el vendedor tuvo

oportunidad razonable para reparar los defectos mas no quiso o no pudo repararlos. D.A.Co. determinará caso a caso lo que constituye una "oportunidad razonable". Art. 27.3 del Reglamento, Enmienda Núm. 2 al Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 5303 del Departamento de Asuntos del Consumidor de 31 de octubre de 1996.

Por otro lado, en su Art. 35, el Reglamento preceptúa que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil para los contratos de compraventa de bienes muebles. Enmienda Núm. 2 al Reglamento de Garantías de Vehículos de Motor, Reglamento Núm. 5303 de 31 de octubre de 1996. En consecuencia, las determinaciones de D.A.Co. relacionadas con estos asuntos deben ser cónsonas con los artículos del Código Civil sobre las acciones de saneamiento en la compraventa. *Domínguez v. Caguas Expressway Motors*, 148 D.P.R. 387 (1999).

Nuestro Código Civil dispone que todo vendedor está obligado a la entrega y al saneamiento de la cosa vendida. Art. 1350 del Código Civil, 31 L.P.R.A. sec. 3801. Este deber de saneamiento, que complementa el deber de la entrega, garantiza al comprador que el vendedor responderá de la posesión legal y pacífica de la cosa comprada y de los vicios o defectos ocultos que tuviese. Art. 1363 del Código Civil, 31 L.P.R.A. sec. 3831. El comprador adquiere la cosa para utilizarla según lo estime mejor. Esta finalidad se vería malograda si entregado el objeto, su adquirente se viera privado de la cosa o simplemente no pudiera aplicarla a los usos a los que la había intencionado. I. Sierra Gil de la Cuesta, *Comentario del Código Civil*, Madrid, Ed. Bosch, 2000, T. 7, pág. 391.

En el derecho de contratos se conoce este deber de garantía como "saneamiento por evicción" (perturbación jurídica del derecho adquirido) o "saneamiento por vicios

ocultos" (perturbación económica de la posesión de la cosa). *Domínguez v. Caguas Expressway Motors*, supra; *Ferrer v. General Motors Corp.*, 100 D.P.R. 246 (1971). El saneamiento por vicios ocultos contempla situaciones en las que posterior a la entrega se evidencian en la cosa defectos intrínsecos que exceden las imperfecciones menores que cabe esperar normalmente en un producto determinado. *D.A.C.O. v. Marcelino Mercury, Inc.*, 105 D.P.R. 80 (1976).

De acuerdo con la doctrina, para que proceda una acción de saneamiento por vicios ocultos han de coincidir los requisitos siguientes: que la cosa adolezca de un vicio oculto que no sea conocido por el adquirente al momento de la compraventa; que el vicio sea de tal gravedad que haga la cosa impropia para el uso a la que se destina o disminuya notablemente su valor de manera que el comprador no habría adquirido la cosa de haberlo conocido; el defecto debe ser preexistente a la venta, y la acción debe ejercitarse dentro del plazo legal de seis meses contados desde la entrega de la cosa vendida. Arts. 1373 y 1379 del Código Civil, 31 L.P.R.A. secs. 3841 y 3847. Véanse, también: *Domínguez v. Caguas Expressway Motors*, supra; *D.A.C.O. v. Marcelino Mercury, Inc.*, supra; *Pérez v. VPH Motor Corp.*, 152 D.P.R. 475 (2000). Hemos resuelto que dicho plazo comienza a transcurrir no desde la fecha de perfección del contrato, sino desde el momento en que cesan las gestiones de inteligencia entre las partes. *Ferrer v. General Motors Corp.*, supra; *Casa Jaime Corp. v. Castro*, 89 D.P.R. 702 (1963).

En casos de saneamiento por vicios ocultos, el Código Civil dispone que el comprador puede optar entre desistir del contrato, abonándose los gastos pagados, o reducir el precio en una cantidad proporcional, a juicio de peritos. Art. 1375 del Código Civil, 31 L.P.R.A. sec. 3843. La primera opción, denominada *acción redhibitoria*, representa la restitución *in integrum*, ya que coloca a las partes en la misma condición en la que se hallaban antes de la compraventa. La segunda, conocida como *acción quanti*

*minoris,* conlleva la restitución del precio percibido en proporción a la pérdida de valor en la cosa, a consecuencia del defecto. Q.M. Scaevola, *Código Civil,* Madrid, Ed. Reus, 1970, T. XXIII, págs. 195–197. Por último, dispone el Código que en caso de que el vendedor conociera del defecto oculto y no lo comunicara al comprador, el último tendrá derecho también a reclamar en concepto de daños y perjuicios. Art. 1375 del Código Civil, *supra.*

En cuanto a la magnitud del defecto que da lugar a una acción redhibitoria, hemos interpretado que no se requiere que éste imposibilite el uso de la cosa, sino que basta con que merme notablemente su valor. *D.A.C.O. v. Marcelino Mercury, Inc.,* supra. Además, como antes mencionamos, el defecto ha de ser oculto al momento de la compraventa. Esta es una cualidad relativa, ya que no se trata de que el defecto quede oculto en sentido literal, sino que lo sea para el comprador, atendiendo sus características individuales. Esto significa que no será responsable el vendedor por los vicios ocultos cuando el comprador sea un perito que debiera *fácilmente* conocer los defectos por razón de su ocupación u oficio. J.M. Manresa y Navarro, *Comentarios al Código Civil español,* Madrid, Ed. Reus, 1969, T. X, Vol. 1, pág. 338.

La determinación sobre la magnitud del defecto es una cuestión de hecho, por cuanto el foro de instancia está en mejor posición para hacer esta apreciación que los foros apelativos. Sólo se justifica la intervención con la determinación del juzgador ante ausencia de prueba o error manifiesto en su apreciación. *Domínguez v. Caguas Expressway Motors,* supra; *García Viera v. Ciudad Chevrolet, Inc.,* 110 D.P.R. 158 (1980); *D.A.C.O. v. Marcelino Mercury, Inc.,* supra.

En ocasiones anteriores habíamos tenido la oportunidad de evaluar acciones por vicios ocultos cuando el objeto de la compraventa es un vehículo de motor. Véanse, entre otros: *Berríos v. Courtesy Motors of P.R., Inc.,* 91 D.P.R. 441 (1964); *Ferrer v. General Motors Corp.,*

supra; *García Viera v. Ciudad Chevrolet, Inc.*, supra; *Domínguez v. Caguas Expressway Motors*, supra. En estos casos hemos resuelto que el paso inicial consiste en determinar si los defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso. *García Viera v. Ciudad Chevrolet, Inc.*, supra. En *Ferrer v. General Motors Corp.*, supra, reconocimos que, por lo general, el comprador de un vehículo de motor no es un perito en mecánica automotriz. Siendo así, requerirle al comprador, lego en materia de mecánica, que pruebe exactamente qué piezas son las defectuosas sería imponerle una carga de prueba injusta. Allí resolvimos que ante esta situación, el comprador no perito sólo está obligado a demostrar que al momento de la compraventa el automóvil funcionaba normalmente, y que el vendedor no quiso o no pudo corregir el defecto a pesar de haber tenido la oportunidad de hacerlo.

 El concesionario recurrido nos invita a distinguir la jurisprudencia existente del caso que nos ocupa basado en el hecho que en cada uno de los casos citados el objeto de la compraventa fue un vehículo de motor nuevo y no usado. No encontramos fundamento legal alguno que sostenga esa contención; como tampoco aduce alguno el concesionario. Ni el Código Civil ni el Reglamento de Garantías de Vehículos de Motor apoyan esa distinción. Analizada la doctrina, resalta con meridiana claridad que *no es la naturaleza del bien, sino la naturaleza del defecto lo que debe ser considerado en una acción redhibitoria.* Incluso, surge claramente del Reglamento que éste aplica tanto a los vehículos nuevos como a los usados. Exigir un estándar de prueba más oneroso al comprador de un vehículo usado —que el que se le exige al comprador de un vehículo nuevo— en nada aporta al propósito del Reglamento de proteger adecuadamente a los consumidores y prevenir las prácticas ilícitas en la compraventa de vehículos de motor. En consecuencia, reiteramos que el comprador de un vehículo de motor —sea éste nuevo o usado— al reclamar por vicios ocultos, sólo estará obligado a demostrar que el automóvil

funcionaba normalmente al momento de la compra y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo.

## III

A la luz del anterior trasfondo jurídico, procede analizar si en este caso se cumplen los requisitos para que proceda una acción redhibitoria. Según las determinaciones de hecho de D.A.Co., fue alrededor de un mes posterior a la compraventa que la señora Polanco notó los defectos mecánicos en la transmisión. No hay nada en el expediente que indique que la compradora fuera una experta mecánica que hubiese detectado el defecto con facilidad. Tampoco surge del expediente que Cacique conociera del defecto y hubiera actuado de mala fe. Por otro lado, la compradora probó a satisfacción de D.A.Co. que el automóvil funcionaba normalmente al momento de la compraventa. Por ende, razonablemente podemos concluir que el defecto mecánico constituyó un vicio oculto desconocido tanto para el vendedor como para la compradora.

El defecto fue de naturaleza tal que imposibilitó el uso del vehículo para el cual la compradora lo había intencionado, al punto que el automóvil tuvo que ser transportado en grúa a la residencia de la peticionaria. Según determinó D.A.Co., al momento de presentarse la querella, el vehículo llevaba más de cinco meses sin que se pudiera utilizar. La agencia determinó, también, que la señora Polanco no habría comprado el automóvil de haber conocido que adolecía del defecto. De otro lado, no cabe duda que la compradora instó su querella dentro del plazo dispuesto por ley. Por último, el vendedor tuvo una oportunidad razonable de corregir el defecto, más en todo momento se negó a hacerlo, alegando que la garantía había vencido.

Ante la evidencia que obra en el expediente, entendemos que D.A.Co. actuó dentro de sus prerrogativas administrativas. Reiteradamente hemos resuelto que las

decisiones de los organismos administrativos merecen la mayor deferencia judicial. Utilizando un criterio de razonabilidad, los tribunales apelativos no deben interferir con estas determinaciones cuando están sostenidas por evidencia sustancial que obre en el expediente. *Otero v. Toyota*, 163 D.P.R. 716 (2005); *Metropolitana S.E. v. A.R.Pe.*, 138 D.P.R. 200 (1995). Las determinaciones de hecho de las agencias administrativas tienen a su favor una presunción de corrección que no debe ser descartada a menos que no se presente evidencia suficiente para derrotarlas. *Otero v. Toyota*, supra. Por tratarse de un caso de vicios ocultos, independientemente de la garantía de servicio pactada entre las partes, D.A.Co. podía, conforme al Art. 27 del Reglamento, *supra*, ordenar la resolución del contrato de compraventa. Además, nada hay en el expediente que nos permita concluir que la señora Polanco tuviera la intención de renunciar a la acción redhibitoria que le asiste bajo el Código Civil y que el Reglamento le reconoce. Erró el foro apelativo intermedio en intervenir con la determinación administrativa y al no prestarle la debida deferencia a las determinaciones de D.A.Co.

Por los fundamentos antes expuestos, *procede la revocación de la sentencia del Tribunal de Apelaciones y la reinstalación de la resolución de D.A.Co.*

*Se dictará sentencia de conformidad.*