| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I | | |
| MARIBELLA RAMOS<br>Parte Recurrente<br><br>v.<br><br>AUTOMAS DEL CARIBE INC<br>H/N/C AUTO CENTRO<br>NISSAN<br>Parte Recurrida | KLRA202500274 | Revisión administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2023-0017377<br><br>Sobre: Compraventa de Vehículos de Motor |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

La señora Maribella Ramos (señora Ramos o recurrente) presentó, por derecho propio, el recurso de *Revisión Judicial* y solicitó que revoquemos la *Resolución* emitida el 11 de abril de 2025 por el Departamento de Asuntos del Consumidor (DACo). Mediante dicho dictamen, declaró No Ha Lugar la *Querella* presentada por la recurrente y, consecuentemente, ordenó su cierre y archivo.

El 11 de junio de 2025, Automás del Caribe LLC h/n/c/ Autocentro Nissan (Autocentro o recurrida) presentó un *Alegato de Autocentro Nissan en oposición a recurso de revisión administrativa.*

Evaluado el recurso, la oposición y los documentos que conforman el apéndice, a la luz del derecho aplicable, confirmamos la *Resolución* recurrida.

### I.

El 21 de mayo de 2021, la recurrente compró en Autocentro un vehículo de motor nuevo, marca Nissan, Modelo Kicks SV, año

2021, número de serie 3N1CP5CV1ML464312.[1] El vehículo fue adquirido a través de First Bank, quien financió la compra.

Posteriormente, el 14 de diciembre de 2023, la señora Ramos presentó ante DACo una *Querella* en contra de Autocentro.[2] Alegó que el vehículo de motor Nissan Kicks que adquirió en el 2021 mediante contrato de venta al por menor a plazos estaba teniendo fallas mecánicas. En específico, mencionó que en el mes de junio de ese mismo año se quedó encerrada en el vehículo sin poder abrir las puertas desde su interior, que el vehículo se ahoga al arrancar y que la bocina no funciona. Ante ello, solicitó como remedio devolver la unidad para que se le proveyera otra.

Posteriormente, el 9 de septiembre de 2024, DACo citó a las partes para inspección del vehículo de motor en el área de servicio de Autocentro.[3] A esta compareció por la parte querellante, la señora Ramos y por la parte querellada, Eliú Hernández, Reynaldo Tapia, ambos en representación de Automás y el Lcdo. Jorge Marquina como representante legal.[4] El técnico de investigación, el Sr. José Torrón Martínez, rindió un informe, el cual fue notificado a las partes el 22 de noviembre de 2024.[5] En relación con los resultados de la inspección, el técnico consignó lo siguiente:

> SAN-2023-0017377-El vehículo estaba en poder de la querellante. Solicit[é] hacer una prueba de carretera donde recorrimos vías rápidas y rurales con curvas y pendientes. El tren propulsor no mostr[ó] problemas y desplaz[ó] muy bien. Entrevist[é] a la querellante y me dej[ó] saber que esporádicamente mientras corre el vehículo el panel de instrumentación le prenden todas las luces de advertencias como un arbolito de navidad. En la prueba de carretera no mostr[ó] en ningún momento tales luces de advertencia. También entrevist[é] al Supervisor del Taller Reynaldo Tapia si existía alguna campana o quejas relacionado con las luces que explica la querellante en el panel de instrumentación y lo de los seguros de las puertas que no abren mecánicamente sin la asistencia electrónica. Al regresar al concesionario solicité hacer la prueba de desconectar el negativo de la

---

[1] *Contrato de venta al por menor a plazos*, Apéndice del recurso, pág. 13.
[2] *Querella*, Apéndice del recurso, págs. 1-4.
[3] *Notificación de citación de inspección*, Apéndice del recurso, págs. 54-56.
[4] *Informe de inspección,* Parte III, Apéndice del recurso, pág. 59.
[5] *Notificación de informe de inspección,* Apéndice del recurso, págs. 57-58.

batería 12 voltios y comencé a abrir las cuatro puertas sin la asistencia electrónica. Estas abrieron sin problemas. De una vez solicite evaluación electrónica "D.T.C. Diagnostic Trouble Code" y mostró los siguientes códigos [...].[6]

Tras ello, su opinión fue la siguiente:

- Entrevist[é] si algún "T.B.S. Technical Service Bulleting" relacionado a la queja de los seguros de las puertas por seguridad y me dej[ó] saber que el querellado que no existe.
- Trate de recrear las condiciones que explicó la querellante cuando el suceso de los seguros y el vehículo no mostr[ó] problemas.
- Entrevist[é] a la querellante y me dej[ó] saber que recientemente remplaz[ó] la batería de 12 voltios.
  - Si la batería de 12 voltios est[á] averiada mermando de su vida útil podría ser que se muestre las luces de advertencia en el panel de instrumentación que explica la querellante.
- Los defectos que explica la querella no se presentaron al momento de la inspección.[7]

El técnico de investigación recomendó el caso para vista administrativa.[8] Del expediente no surge que las partes hubiesen objetado el informe suscrito por el técnico de investigación.

El 11 de abril de 2025, DACo emitió una *Resolución* en la que declaró No Ha Lugar la *Querella* y ordenó su cierre y archivo. Conforme surge de la resolución recurrida, el 10 de abril de 2025 se celebró mediante videoconferencia la vista administrativa, ante el Lcdo. Rafael J. Otero Díaz. Desfilada la prueba testifical y documental, DACo emitió su dictamen en el que formuló las siguientes determinaciones de hechos:

1. La parte querellante se identifica como Maribella Ramos (en adelante, parte querellante), residente del municipio de San Juan. Su dirección postal de récord es la siguiente: Urb. Villa Nev[á]rez 1043 Calle 8, San Juan, Puerto Rico 00927-5221.

2. La parte querellada se identifica como Autom[á]s del Caribe, LLC., haciendo negocios como Autocentro Nissan (en adelante, parte querellada o el concesionario), compañía de responsabilidad limitada autorizada a realizar negocios en Puerto

---

[6] *Informe de inspección,* Parte IV, Apéndice del recurso, págs. 60.
[7] *Íd.*, Parte V, pág. 62.
[8] *Íd.*, Parte VII, pág. 63.

Rico, con número de registro Núm. 310491 según consta en el Registro de Corporaciones del Departamento de Estado. La dirección postal de su agente residente es la siguiente: PO Box 191958, San Juan, PR, 00919-1958.

3. Durante la vista administrativa los siguientes documentos fueron admitidos en evidencia como prueba documental y marcados como Exhibits:

    1. Hoja de Servicio (#69496). *Exhibit* #1.
    2. Hoja de Servicio (#74742). *Exhibit* #2.
    3. Hoja de Servicio (#77870). *Exhibit* #3.
    4. Hoja de Servicio (#78520). *Exhibit* #4.
    5. Hoja de Servicio (#82250). *Exhibit* #5.
    6. Hoja de Servicio (#86357). *Exhibit* #6.
    7. Hoja de Servicio (#87833). *Exhibit* #7.
    8. Hoja de Servicio (#89040). *Exhibit* #8.
    9. Hoja de Servicio (#95606). *Exhibit* #9.
    10. Bitácora preparada por querellante. *Exhibit* #10.

4. En o alrededor del día 21 de mayo de 2021 la parte querellante adquirió mediante contrato de venta al por menor a plazos con una entidad financiera y el concesionario querellado, un vehículo de motor nuevo, de la marca Nissan, modelo Kicks, del año 2021.

5. El vehículo de motor objeto de la querella está cubierto por una garantía básica de manufactura de tres (3) años o 36,000 millas, lo primero que ocurra y garantía en el tren de potencia de cinco (5) años o 60,000 millas, lo primero que ocurra.

6. La parte querellante presentó la querella de epígrafe alegando, principalmente, lo siguiente: problemas de funcionamiento con la bocina y problemas en el arranque y propulsión del vehículo.

7. Como parte de las visitas de la parte querellante al centro de servicio del concesionario querellado, se generaron varias hojas de servicios que detallan las condiciones reportadas, el diagnóstico de la condición presentada y las labores efectuadas por el concesionario querellado.

8. Como parte de los servicios de reparación brindados en garantía al vehículo pertinentes a la querella, se realizó lo siguiente: se reemplazó la batería en dos (2) ocasiones, se le reemplazó el "throt[t]le body", "ABS actuator & electric module", más se le

realizaron las inspecciones y mantenimiento de rutina conforme los parámetros del fabricante.

9. La queja de la parte querellante sobre el funcionamiento de la bocina se realizó por primera vez cuando el vehículo ya contaba con sobre 48,000 millas recorridas, es decir, fuera del término de la garantía aplicable a dicho componente del vehículo.

10. El día 12 de noviembre de 2024 el Técnico de Investigación del DACO asignado al caso (en adelante, Inspector), realizó una inspección del vehículo. El inspector realizó una evaluación de las condiciones del vehículo conforme las alegaciones de la querella y produjo un informe de inspección.

11. En su informe, como parte de sus resultados el Inspector estableció que: "El vehículo estaba en poder de la querellante. Solicit[é] hacer una prueba de carretera donde recorrimos vías rápidas y rurales con curvas y pendientes. El tren propulsor no mostr[ó] problemas y desplaz[ó] muy bien. Entrevist[é] a la querellante y me dej[ó] saber que esporádicamente mientras corre el vehículo el panel de instrumentación le prenden todas las luces de advertencias como un arbolito de navidad. En la prueba de carretera no mostr[ó] en ningún momento tales luces de advertencia. También entrevist[é] al Supervisor del Taller Reynaldo Tapia si existía alguna campana o quejas relacionado con las luces que explica la querellante en el panel de instrumentación y lo de los seguros de las puertas que no abren mecánicamente sin la asistencia electrónica. Al regresar al concesionario solicité hacer la prueba de desconectar el negativo de la batería 12 voltios y comencé a abrir las cuatro puertas sin la asistencia electrónica. Estas abrieron sin problemas. De una vez solicite evaluación electrónica "D.T.C. Diagnostic Trouble Code" y mostró los siguientes códigos […]."

12. Como parte de su opinión pericial, el técnico estableció, en lo pertinente, lo siguiente: "Entrevist[é] si algún "T.B.S. Technical Service Bulleting" relacionado a la queja de los seguros de las puertas por seguridad y me dej[ó] saber que el querellado que no existe. Trate de recrear las condiciones que explicó la querellante cuando el suceso de los seguros y el vehículo no mostr[ó] problemas. Entrevist[é] a la querellante y me dej[ó] saber que recientemente remplaz[ó] la batería de 12 voltios. Si la batería de 12 voltios est[á] averiada mermando de su vida útil podría ser que se muestre las luces de advertencia en el panel de instrumentación que

explica la querellante. Los defectos que explica la querella no se presentaron al momento de la inspección."

13. La parte querellante no cumplió con el quantum de prueba requerido para demostrar que procede una resolución de contrato como remedio bajo la totalidad de las circunstancias en el presente caso.

14. La parte querellante utiliza el vehículo a diario y de manera regular, dándole el uso al vehículo para el propósito que fue adquirido.

15. Las condiciones reflejadas por el vehículo durante la vigencia de la garantía fueron debidamente atendidas y reparadas por el concesionario querellado.

16. La parte querellada no incumplió con sus obligaciones bajo los acuerdos contraídos con la parte querellante ni con la reglamentación aplicable del DACO.

17. El concesionario querellado atendió oportuna y adecuadamente las reclamaciones en garantía realizadas por la parte querellante.

18. La parte querellante no presento prueba pericial, documental o testimonial adicional para probar que el vehículo adolece de defectos que impiden que el mismo funcione adecuadamente.

19. Las condiciones y/o desperfectos alegados en la querella no se presentaron el día de realizada la inspección del DACO.

En virtud de lo anterior, concluyó que Automás no incumplió con sus obligaciones dado a que brindó los servicios de reparación en garantía al vehículo de motor de la señora Ramos y que ello se desprendía del propio expediente. Además, señaló que, según el informe del técnico de investigación, las condiciones alegadas en la querella no se presentaron el día en que se realizó la inspección. Determinó que las condiciones reclamadas en la querella fueron satisfactoriamente atendidas bajo la cubierta de garantía.

Inconforme con la determinación, la señora Ramos presentó el recurso de revisión judicial de epígrafe en el que hizo el siguiente señalamiento de error:

**Erró el Departamento de Asuntos al Consumidor al ordenar el "cierre y archivo de la querella" pues es de la totalidad del expediente administrativo comprueba que el vehículo adolece de un serio desperfecto que lo hace un auto defectuoso, sobre todo inseguro; que fue adquirido con vicios ocultos, que justifican la procedencia de la aplicación de la doctrina del dolo.**

En resumen, arguyó que el foro administrativo emitió una resolución de cierre y archivo sin consideración de la totalidad de la prueba que consta en el expediente administrativo. Alegó que, al poco tiempo de adquirido, el vehículo presentó un defecto del sistema eléctrico y de la batería y que, a pesar de que el concesionario le ha reemplazado la batería, surge del expediente administrativo que el desperfecto no se ha corregido. Arguyó que aun el vehículo adolece del alegado defecto.

Por su parte, el 11 de junio de 2025, Automás presentó un *Alegato de Autocentro Nissan en oposición a recurso de revisión administrativa* en el que negó que el error se haya cometido. Arguyó que la determinación de DACO está apoyada en evidencia sustancial que obra en el expediente administrativo.

**II.**

**A.**

La sección 4.5 de la LPAU, Ley Núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Sin embargo, en cuanto a las conclusiones de derecho, la misma Ley se limita a rezar que: "serán revisables en todos sus aspectos por el tribunal".

El Tribunal Supremo ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a

determinar si estas actuaron arbitraria o ilegalmente.[9] No obstante, recientemente en *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, resuelto el 21 de mayo de 2025, señaló que esta consideración por parte de los tribunales no equivale a una renuncia de la función revisora. Ante ello, el Alto Foro nos invita a no abdicar las funciones judiciales. Entiéndase, que no nos convirtamos en autómatas obligados a respetar ciegamente las determinaciones de los foros administrativos, particularmente cuando se tratan de conclusiones de derecho. En otras palabras, los tribunales no tienen que necesariamente darle deferencia a la interpretación de derecho que haga una agencia.[10]

En cuanto a los hechos, reconocemos y damos deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[11]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[12] Así, en cuanto a las determinaciones de hecho que realiza una agencia, el Tribunal Supremo ha resuelto que los tribunales revisores tienen que sostenerlas si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad.[13] Por evidencia sustancial se entiende "aquella evidencia

---

[9] *Fuentes y otros v. ARPe,* 134 DPR 947 (1993)
[10] *Íd.*
[11] *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 839 (2021), citando a *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR,* 185 DPR 341, 358 (2012).
[12] *Transp. Sonell, LLC v. Jta. Subastas ACT,* 214 DPR ___ (2024), 2024 TSPR 82; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 215 (2012).
[13] *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). Véase, además, Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[14]

Por lo tanto, la parte afectada deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[15]

**B.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341, *et seq.*, delegó en el DACo la responsabilidad de vindicar e implementar los derechos del consumidor.[16] Para ello, "se estableció en la agencia una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a derecho".[17]

A su vez, la Ley Núm. 7 del 24 de septiembre de 1979, según enmendada, *Ley de Garantías de Vehículos de Motor* (Ley de Garantías de Vehículos de Motor), fue promulgada con el fin de "garantizar la seguridad, salud y bienestar de la comunidad evitando que vehículos de motor defectuosos, de gran potencialidad de daño al conductor, ocupantes y otros, transiten por las vías públicas".[18]

Asimismo, para proteger a los consumidores de vehículos de motor e imponerles a los fabricantes o manufactureros, y a los distribuidores y vendedores, como eslabones en la cadena de distribución, la responsabilidad y obligación de brindarle a los

---

[14] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).

[15] *Otero v. Toyota*, supra, pág. 728.

[16] 3 LPRA sec. 341, *et seq.*

[17] *Ortiz Rolón v. Soler Auto Sales, Inc., et al.*, 202 DPR 689, 696 (2019); 3 LPRA sec. 341e(d).

[18] Exposición de Motivos de la *Ley de Garantías de Vehículos de Motor*. 10 LPRA sec. 2051, *et seq.*

consumidores el servicio de garantía de fábrica, independientemente del lugar donde el consumidor haya adquirido dicho vehículo.[19]

En virtud de ello, el Secretario del DACo promulgó el *Reglamento de Garantías de Vehículos de Motor*, Reglamento Núm. 7159 de 6 de julio de 2006 (Reglamento Núm. 7159).[20] El propósito de este Reglamento es proteger a los consumidores que invierten en la adquisición de vehículos de motor, y procurar que estos sirvan para los propósitos para los cuales fueron adquiridos, y que tengan las condiciones mínimas necesarias para garantizar la protección de la vida y propiedad, así como prevenir las prácticas ilícitas en la venta de vehículos de motor en Puerto Rico. [21]

Con respecto a la reparación de defectos en los vehículos de motor nuevos, la Regla 22 del referido reglamento establece lo siguiente:

> El Departamento podrá, a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de la venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor de fabrica o fabricante, dentro de los términos de la garantía de fábrica tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos. Lo que constituye oportunidad razonable para reparar se determinará tomando en consideración las circunstancias particulares de cada caso.[22]

Además, la Regla 37 del referido reglamento establece que nada de lo dispuesto en él limita el derecho del consumidor a ejercer cualquier acción que le reconozcan las leyes del Estado Libre Asociado de Puerto Rico, así como las acciones de saneamiento por evicción o vicios ocultos, y la acción redhibitoria que reconoce el Código Civil de Puerto Rico para los contratos de compraventa.[23]

---

[19] *Íd.*

[20] Cabe señalar que algunas reglas del Reglamento Núm. 7159 fueron enmendadas por el Reglamento Núm. 7920 de 3 de septiembre de 2010, por lo cual de aplicar alguna regla enmendada por dicho reglamento así lo haremos constar.

[21] Regla 2 del Reglamento Núm. 7159.

[22] Regla 22 del Reglamento Núm. 7159.

[23] *Polanco v. Cacique Motors,* 165 DPR 156, 165 (2005).

**C.**

El Código Civil de Puerto Rico, Ley Núm. 55-2020, establece la obligación de saneamiento por evicción o vicios ocultos. Al respecto, el Artículo 1261 del referido código establece lo siguiente:

> La persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien, aunque lo ignorase. Igual obligación se deben entre sí quienes dividen bienes comunes. La persona obligada responde ante el adquirente y quienes lo sucedan en el derecho por cualquier causa y título.[24]

Por otro lado, el Artículo 1263 dispone que el adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente o resolver total o parcialmente el contrato.[25] Ahora bien, dicho artículo dispone además que la resolución total solo procederá si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien.[26] También que la misma regla aplica en caso de adquisición conjunta de varios bienes. Para los casos de evicción, el referido artículo establece que el adquirente también tiene derecho al resarcimiento de los daños sufridos, salvo que haya actuado con negligencia. En caso de vicio redhibitorio, el adquirente solo tendrá derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo.[27] En ambos supuestos, si la adquisición se hizo a riesgo del adquirente o en subasta judicial o administrativa, no se responde por el resarcimiento de los daños sufridos y de los gastos que haya incurrido para sanear el título.[28]

En lo relacionado al vicio redhibitorio, el Artículo 1267 del Código Civil lo define como el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad

---

[24] 31 LPRA sec. 9851.
[25] 31 LPRA sec. 9853.
[26] *Íd.*
[27] *Íd.*
[28] *Íd.*

que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él.[29] Dicho artículo añade que también se considera vicio redhibitorio aquel especialmente acordado como tal por las partes, aquel que el transmitente garantiza que no existe, y la ausencia de la calidad convenida.[30] El referido artículo establece, además, que el transmitente responde aun cuando ignore la existencia del vicio redhibitorio.[31]

Por otra parte, el Artículo 1268 dispone que no es vicio redhibitorio el que el adquirente conoce al momento de la transmisión o el que pudo haber conocido conforme a sus aptitudes.[32] Para juzgar la aptitud del adquirente, el citado artículo dispone que debe atenderse el deber que tiene de obrar con prudencia y pleno conocimiento de las circunstancias.[33]

Respecto al término prescriptivo para instar una causa de acción por vicio redhibitorio, el Artículo 1270 establece que las acciones para reclamar por vicios redhibitorios prescriben a los seis (6) meses, contados a partir de la entrega del bien transmitido, o desde la última gestión de inteligencia entre las partes.[34] Al respecto, en *Casa Jaime Corp. v. Castro*[35], el Tribunal Supremo señaló que dicha acción no se extingue automáticamente a los seis meses en todos los casos.[36] Es por esto que nuestro Alto Foro aplicó las doctrinas generales del Código Civil sobre la prescripción extintiva, determinando que las constantes reclamaciones y contestaciones de los interesados interrumpen la prescripción. Por tanto, "dicho plazo comienza a transcurrir no desde la fecha de perfección del contrato, sino desde el momento en que cesan las

---

[29] 31 LPRA sec. 9871.
[30] *Íd.*
[31] *Íd.*
[32] 31 LPRA sec. 9872.
[33] *Íd.*
[34] 31 LPRA sec. 9874.
[35] 89 DPR 702 (1963).
[36] *Íd.,* pág. 704.

gestiones de inteligencia entre las partes".[37]   Sin embargo, no se puede perder de perspectiva que estas gestiones que interrumpen el término tienen que presentarse dentro del plazo de seis meses, a partir de la entrega de la cosa.

Para que proceda una acción de saneamiento por vicios ocultos o redhibitorios, se tienen que cumplir los siguientes requisitos: (1) que la cosa adolezca de un vicio oculto, que no sea conocido por el adquirente al momento de la compraventa; (2) que el vicio sea de tal gravedad que haga la cosa impropia para el uso al que se destina o disminuya notablemente su valor de manera que el comprador no habría adquirido la cosa de haberlo conocido; (3) el defecto debe ser preexistente a la venta; y, (4) la acción debe ejercitarse dentro del plazo legal de seis meses contados desde la entrega de la cosa vendida.[38]

Además, en estos casos el Código Civil dispone que el comprador puede optar entre: (1) la acción redhibitoria, que coloca a las partes en la condición que se encontraban antes de la compraventa, mediante la restitución de las prestaciones, o (2) la reducción del precio en una cantidad proporcional, a juicio de peritos.[39]

Ahora bien, para que proceda una acción redhibitoria, los vicios tienen que ser de tal naturaleza que la imperfección o defecto haga imposible el uso del objeto, o que el uso se vea disminuido al extremo de mermar considerablemente la utilidad o el valor de la cosa para el propósito para el cual fue adquirida.[40]

En acciones por vicios ocultos, cuando el objeto de la compraventa es un vehículo de motor, hay que determinar si los

---

[37] *Polanco v. Cacique Motors, supra,* pág. 166.
[38] *Íd.*
[39] *Polanco v. Cacique Motors*, supra.
[40] *Domínguez v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999).

defectos de que adolece el automóvil constituyen un vicio oculto, sea redhibitorio o cuantiminoso.[41]

Por lo general, el comprador de un vehículo de motor no es un perito de mecánica automotriz. Requerirle a un comprador, lego en materia de mecánica, que pruebe exactamente qué piezas son las defectuosas sería imponerle una carga de prueba injusta.[42] Asimismo, en cuanto al peso de la prueba sobre la existencia de vicios ocultos, el Tribunal Supremo de Puerto Rico ha opinado que "el comprador de un vehículo de motor –sea éste nuevo o usado– al reclamar por vicios ocultos, sólo estará obligado a demostrar que el automóvil funcionaba normalmente al momento de la compra y que el vendedor no quiso o no pudo corregir el defecto, a pesar de haber tenido la oportunidad de hacerlo".[43]

**D.**

La invalidez de un contrato es una sanción legal que, mediante una decisión judicial, priva a un negocio jurídico de sus efectos propios por adolecer de un vicio originario, esencial e intrínseco al acto.[44]

En lo relativo a las clases de invalidez, el negocio jurídico puede ser nulo o anulable. Es nulo si: (1) el objeto, la causa o el consentimiento son inexistentes; (2) el objeto o la causa son ilícitos; (3) carece de las formalidades exigidas por la ley para su validez; o (4) es contrario a la ley imperativa, la moral o el orden público. De otra parte, el negocio es anulable si: (1) el otorgante tiene incapacidad de obrar, (2) concurre algún vicio de la voluntad, o (3) el acto adolece de un defecto de forma no solemne.[45]

---

[41] *Polanco v. Cacique Motors*, supra, pág. 159.
[42] *Íd.*
[43] *Íd.*
[44] Art. 341 del Código Civil, 31 LPRA sec. 6311.
[45] Art. 342 del Código Civil, 31 LPRA sec. 6312.

Los vicios de la voluntad son el error, el dolo, la violencia y la intimidación.[46] Si el vicio fue determinante para el otorgamiento del negocio jurídico, el acuerdo es anulable. La prueba de la existencia del vicio y su carácter incumbe a quien lo alega.[47]

Específicamente, el "dolo grave" se define como "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado".[48] Por tanto, "constituye dolo callar sobre una circunstancia importante relacionada con el objeto del contrato".[49] Conforme lo anterior, no todo tipo de dolo produce la nulidad del contrato. Para que el dolo produzca la nulidad del contrato, deberá ser grave y no haber sido empleado por las dos partes contratantes.[50] Si la acción u omisión no provoca la realización del negocio jurídico, el perjudicado puede reclamar los daños y perjuicios que sufra.[51]

En cambio, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[52] Esto es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación.[53] De hecho, en este tipo de casos existe la voluntad de contratar de la parte perjudicada, pero hay engaño en el modo en que se celebra el negocio jurídico. Por lo cual, el contrato de todas formas se hubiera celebrado, pero no bajo las mismas condiciones.[54]

El Tribunal Supremo dispuso en *Colón v. Promo Motor Imports, Inc.*, supra, que independientemente del tipo de dolo que se alegue, corresponde a quien reclama dicha conducta la responsabilidad de la prueba.[55] No obstante, esto no significa que el dolo debe

---

[46] Art. 285 del Código Civil, 31 LPRA sec. 6191.
[47] Art. 286 del Código Civil, 31 LPRA sec. 6192.
[48] Art. 292 del Código Civil, 31 LPRA sec. 6211.
[49] *Bosques v. Echevarría,* 162 DPR 830, 836 (2004).
[50] *Íd.*
[51] Art. 292 del Código Civil, *supra.*
[52] Art. 294 del Código Civil, 31 LPRA sec. 6213.
[53] *Colón v. Promo Motor Imports, Inc.,* 144 DPR 659, 667 (1997).
[54] *Íd.*
[55] *Íd.,* pág. 668.

establecerse de manera directa, ya que puede demostrarse mediante inferencia o por evidencia circunstancial.[56] "La preparación académica, condición social y económica, y relaciones y tipo de negocios en que se ocupa una persona son factores de particular significación al determinar la existencia de dolo que anule su consentimiento".[57]

**III.**

En este caso, nos corresponde resolver si DACO incidió al declarar No Ha Lugar la *Querella* y, consecuentemente, ordenar el cierre y archivo de ésta.

Es la contención de la señora Ramos que DACo emitió una resolución de cierre y archivo de la querella sin considerar la totalidad de la prueba presentada. Según alegó, el vehículo de motor mostró, desde poco tiempo en que lo compró, serias condiciones relacionadas al sistema eléctrico y problemas con la batería. La recurrente adujo que surgen del expediente administrativo los códigos por los cuales se le hicieron los cambios de batería y que estos responden a varios *recalls* relacionados a la batería. Mencionó que, aunque los *recalls* se identifican en cuanto a la Nissan Armada, estos fueron reconocidos y aplicados en cuanto al vehículo objeto de la querella, Nissan Kicks.

Por su parte, la recurrida arguyó que la señora Ramos no pudo probar que el vehículo de motor adolecía de un defecto que el concesionario no haya podido o querido corregir. Adujo que la recurrente no presentó durante la vista administrativa evidencia alguna para refutar el hecho de que, el día de la inspección por el técnico de inspección de DACo, el vehículo no adolecía de ninguna de las condiciones alegadas en la querella. Adujo que el Informe no fue objetado, por lo cual quedó estipulado de conformidad con la

---

[56] *Íd.*, pág. 669.
[57] *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988), citando a *Miranda Soto v. Mena Eró,* 109 DPR 473, 478 (1980).

Regla 15.3 del Reglamento Núm. 8034. Por ello, alegó que cualquier condición que hubiese estado presente en el vehículo, había sido corregida para la fecha de la inspección y, por tanto, no procedía la resolución del contrato. En cuanto a la alegación de vicios ocultos y dolo, arguyó que la recurrente no presentó evidencia alguna para establecer dichas causas de acción.

En el caso de marras no se da ninguna de las circunstancias que requieran nuestra intervención en las determinaciones, estas son: 1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal.

Según surge del expediente, el técnico de investigación de DACo indicó que los defectos que narró la señora Ramos en la querella no se presentaron al momento de la inspección. Mencionó que trató de recrear las condiciones que explicó la recurrente pero que el vehículo de motor no mostró problemas. Con ello, sugirió proseguir con una vista administrativa. Consecuentemente, DACo determinó que Automas atendió las condiciones que reclamó la señora Ramos bajo la cubierta de garantía y por ello resolvió que no procedía el remedio solicitado en la querella.

Conforme a la Regla 22 del Reglamento Núm. 7159, DACo podrá decretar la resolución del contrato en aquellos casos en que el concesionario, dentro del término de garantía, tuvo la oportunidad razonable de reparar uno o más defectos, pero no quiso o no pudo corregirlos. En este caso, surge del expediente que, Automas atendió a la recurrente en servicio de garantía del vehículo de motor objeto de la querella. Ello consta de varios *invoice* anejados al expediente sobre visitas al centro de servicios del concesionario. El 28 de julio de 2022, Automas le reemplazó la batería y atendió alegación de los

jalones en el arranque.[58] El 11 de mayo de 2023, atendió las alegaciones de defecto de luces de *check engine*.[59] El 15 de junio de 2023, Automas atendió las alegaciones de defectos sobre seguros de las puertas.[60]

En este caso, este Tribunal concluye que la señora Ramos no demostró que las determinaciones de hecho y conclusiones de derecho de DACo no estaban basadas en la totalidad del expediente administrativo. Nótese que, en virtud del informe del técnico de investigación de DACo, el foro administrativo determinó como un hecho probado que Automas reparó los defectos que presentó el vehículo de motor y que aquellos defectos alegados en la querella no se observaron el día de la inspección. Por ello, concluyó que esta no cumplió con el *quantum* de prueba requerido para una resolución del contrato. Además, no surge del expediente que la recurrente haya objetado oportunamente el informe de inspección.

En virtud de todo lo anterior y conforme a los hechos que nos ocupan, le reconocemos deferencia al dictamen del organismo administrativo. Por tanto, resolvemos que DACo no cometió el error señalado, por lo que corresponde confirmar la *Resolución* recurrida.

**IV.**

Por los fundamentos expuestos, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[58] *Invoice*, Apéndice del recuros, pág. 34-35.
[59] Íd., pág. 36.
[60] *Íd.*, pág. 41.