ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| GUARIONEX CANDELARIO RIVERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | TA2026RA00068 | REVISIÓN ADMINISTRATIVA procedente del Departamento de Corrección y Rehabilitación<br><br>Solicitud Número: 12,863-26<br><br>Sobre: Clasificación de Confinados |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece por derecho propio el señor Guarionex Candelaria Rivera (Sr. Candelaria; el recurrente) y nos solicita la revisión de una determinación emitida por el Departamento de Corrección y Rehabilitación (DCR) en la cual rechazan su solicitud de reclasificación de custodia mediana, a pesar de que cuenta con los elementos de juicio para ello.

Adelantamos que se confirma la determinación administrativa recurrida sin trámite ulterior bajo lo dispuesto en la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5).[1]

**I**

El Sr. Candelario se encuentra confinado en la Institución Ponce Máxima, extinguiendo una sentencia de doscientos tres (203) años, siete (7) meses y seis (6) días, por el delito asesinato en primer grado; asesinato en primer grado contra funcionario público (2 cargos); cuatro casos de disparar o apuntar con arma (Art. 5.15, Ley de Armas) y tres cargos de

---

[1] Esta regla nos permite "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante [nuestra] consideración, con el propósito de lograr su más justo y eficiente despacho".

restricción de libertad agravada Código Penal. Cumple esa sentencia en custodia máxima desde el 23 de diciembre de 2016.

Según se desprende del recurso ante nosotros y sus anejos, el Sr. Candelario solicitó la reclasificación de su custodia. El Comité de Clasificación y Tratamiento del DCR revisó la custodia del recurrente, el 12 de diciembre de 2025, y su puntuación recomendaba custodia mínima; sin embargo, se ratificó la custodia máxima en la que se encuentra. El DCR fundamentó su determinación en el que el Reglamento aplicable permite modificaciones discrecionales a base de la gravedad del delito.[2]

Inconforme, el Sr. Candelario solicita reconsideración, la cual fue denegada el 13 de enero de 2026. El ente apelativo interno concluyó que el Reglamento aplicable permite modificaciones discrecionales luego de tomar en consideración varios factores que incluyen sobre la gravedad del delito y la extensión de la sentencia.

Oportunamente, el 18 de febrero de 2026, el recurrente presentó un recurso de revisión judicial en el cual le imputa al DCR la comisión de los siguientes errores:

1. Erró el Comité de Clasificación y Tratamiento cuando fundamentó los acuerdos tomados contrario a lo establecido en el Manual de Clasificación de Confiados Núm. 9033 del 18 de junio de 2018 puesto en vigor bajo la administración del ex -secretario Erick Rolón Suárez.

Luego de examinar el expediente del caso y sus anejos, procedemos a exponer el derecho aplicable.

**II**

Los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. Por ello, la revisión judicial de las determinaciones administrativas se limita a examinar si la actuación de la agencia fue razonable, y solo cede cuando la decisión no está basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley, o cuando su actuación es irrazonable o

---

[2] Reglamento 9033 del 18 de junio de 2018, *Manual Para la Clasificación de Confinados*, derogado. El *Manual de Clasificación* vigente es el Reglamento 9151 del 22 de enero de 2020, que esta enmendado por el Reglamento 9287 del 20 de mayo de 2021, *Enmienda al Manual para la Clasificación de los Confinados*.

ilegal. *Caribbean Communications v. Pol. de P.R.*, 176 D.P.R. 978, 1006 (2009).

La norma general es que las decisiones de los organismos administrativos deben ser consideradas con gran deferencia por los tribunales apelativos, por razón de la experiencia y pericia de las agencias respecto a las facultades que se les han delegado. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 186 (2009). Sus decisiones deben ser respetadas a menos que la parte recurrente establezca que hay evidencia en el expediente administrativo suficiente para demostrar que la agencia no actuó razonablemente. *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009).

Por lo tanto, para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. *Polanco v. Cacique Motors*, 165 DPR 156, 170 (2005).

En cuanto a las conclusiones de derecho, éstas serán revisables en todos sus aspectos por el tribunal. Los tribunales, como conocedores del derecho, no tienen que dar deferencia a las interpretaciones de derecho que hacen las agencias administrativas. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 470 (2009). Estos están en la misma posición que la agencia al evaluar la prueba documental y pericial. *Rebollo v. Yiyi Motors*, 161 DPR 69, 78 (2004). A pesar de ello, los tribunales no pueden descartar liberalmente las conclusiones e interpretaciones de la agencia. *JP, Plaza Santa Isabel v. Cordero Badillo, supra*, pág. 187.

### III

En su escrito, el recurrente defiende que no proceden las modificaciones discrecionales por diversas razones. No tiene razón. Surge del expediente que "[e]l Comité de Clasificación y Tratamiento determinó

usar la modificación discrecional" debido a el "'Historial de Violencia Excesiva': **el confinado tiene historial documentado de conducta violenta, tales como <u>asesinato</u>, violación, agresión, intimidación con un arma o incendio intencional que no están totalmente reflejadas en la puntuación del historial de violencia".** Además, "el Comité de Clasificación consideró otros aspectos establecidos en el Manual para la Clasificación de Confinados como lo son, la fecha prevista para referir a la Junta de Libertad Bajo Palabra (27 de diciembre de 2040, dentro de 14 años) y la fecha prevista de excarcelación (4 de septiembre de 2218, dentro de 192 años)"; tomó "conocimiento de que completó las Terapias de Regulación de Coraje y Control de Impulsos el 7 de junio de 2023"; y, "el 18 de diciembre de 2024 completó las Terapias de Aprendiendo a Vivir sin Violencia".

Dada la complejidad que supone atender una población penal, es difícil concluir que únicamente el resultado de un formulario determine el nivel de custodia o la peligrosidad de un confinado. No solamente son permitidas las modificaciones discrecionales, son necesarias. A falta de prueba en el expediente que revele que la actuación fue una irrazonable, no estamos en posición de negar la deferencia y la presunción de corrección que acompañan las actuaciones del DCR.

**IV**

Por los fundamentos antes expuestos se confirma la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones